COMMONWEALTH *vs.* LEO F. BENOIT & another.

Suffolk.   January 8, 1964. — February 6, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Witness,* Immunity from prosecution. *Massachusetts Crime Commission. Bribery. Jurisdiction,* Special commission. *Statute,* Construction. *Special Commission.*

G. L. (Ter. Ed.) c. 271, § 39, relates to corrupt acts of agents, employees or servants of persons or corporations engaged in private business and not to corrupt acts of public officers.   [4]

The Massachusetts Crime Commission, created by Res. 1962, c. 146, is not a court and does not have "jurisdiction of the offence" described in G. L. (Ter. Ed.) c. 271, § 39, and the immunity from prosecution afforded by § 39 to a witness before a court trying a proceeding for such offence "on account of any transaction, matter or thing concerning which he may testify or produce evidence" before the court does not apply to a witness before the commission so as to afford him immunity from prosecution on account of matters concerning which he has testified or produced evidence before it.   [5]

The Massachusetts Crime Commission, created by Res. 1962, c. 146, must apply to this court or to the Superior Court in order to compel the attendance of witnesses summoned by the commission to appear before it.   [6]

Construed in the light of its legislative history, Res. 1962, c. 146, establishing the Massachusetts Crime Commission as an investigating agency, affords no immunity from prosecution to witnesses with respect to matters concerning which they testify or produce evidence before the commission.   [6–7]

INDICTMENTS found and returned on May 10, 1963.

Pleas in bar were overruled in the Superior Court by *Smith,* J., who reported the cases.

*James W. Kelleher* for Leo F. Benoit (*George J. Leary* for John A. Letteney with him).

*Walter Jay Skinner,* Assistant Attorney General, for the Commonwealth.

WILKINS, C.J.   In these two indictments against Leo F. Benoit and John A. Letteney the defendants filed pleas in bar, which were overruled in the Superior Court by a judge who has made full findings and reported the propriety of his ruling to this court.   G. L. c. 278, § 30A, inserted by St. 1954, c. 528.

Indictment No. 3993 charges that the defendants conspired together at Boston at divers times between January 1, 1960, and November 1, 1960, "to corruptly request and to corruptly accept gifts and gratuities and promises to make a gift from Douglas Goodman under an agreement and with an understanding that the vote, opinion and judgment of the said Leo F. Benoit, then an executive officer of the Commonwealth of Massachusetts, to wit: chairman of the State Housing Board, would be given in a particular manner and upon a particular side of a question that was then pending or might by law be brought before him in his official capacity."

Indictment No. 3994 in similar language charges the defendants with corruptly requesting gifts and gratuities and corruptly accepting gifts, gratuities, and promises to make a gift from Goodman.

There is no allegation in either indictment as to a public office held by Letteney.   The judge found that the latter was appointed principal construction engineer of the State Housing Board on April 12, 1960, and director of the Divi-

sion of Urban and Industrial Renewal of the same board on July 30, 1961. In both positions he was the chief administrative assistant to Benoit.

These cases have been before us earlier on the defendants' motions to quash. The motion in No. 3994 stated that that indictment purported to be drawn under G. L. c. 268, § 8. See *Commonwealth* v. *Benoit,* 346 Mass. 294, which definitely describes that indictment as charging violations of § 8. The defendants were then relying upon the fact that § 8 had been repealed by St. 1962, c. 779, § 3, which was effective May 1, 1963, and were contending that there was no saving clause. Statute 1962, c. 779, § 1, inserted a new G. L. c. 268A, which is entitled, "Conduct of Public Officials and Employees."

The pleas allege that each defendant by reason of having given testimony before the Massachusetts Crime Commission, created by c. 146 of the Resolves of 1962,[1] acquired an immunity from prosecution, pursuant to the terms of G. L. (Ter. Ed.) c. 271, § 39, as to "any transaction, matter or thing" concerning which he had testified or produced evidence before the commission.

On April 4, 1963, the defendants were summoned to appear before the commission to testify concerning corrupt practices in government at State and local levels and, in particular, corruption in the State Housing Board and financial transactions of State Housing Board officials. On the reverse side of the summonses were printed rules of the commission. One of these was, "No natural person shall be compelled to accuse himself or to furnish against himself evidence of any crime or offense." The defendants later

[1] This is entitled, "Resolve providing for an investigation and study by a special commission relative to crime and corruption." In its first paragraph the resolve provides for a commission of seven unpaid members, to be appointed by the Governor. Its purposes are, in part, "to investigate and study as a basis for legislative action the existence and extent of organized crime within the commonwealth and corrupt practices in government at state and local levels, [and] the existence of conditions which tend or may tend to prevent or interfere with the proper enforcement of the laws relating thereto." The commission is required to report annually to the General Court, the last report to be not later than June, 1965.

appeared and testified at private hearings at which each was informed of his privilege. They nevertheless gave evidence without asserting a privilege. Letteney had also previously testified on February 18, 1963. The Commonwealth in its brief states that this appearance was voluntary and not in response to a summons. This does not clearly appear from the record.

Contrary to the defendants' present contention, the indictments do not allege acts which are offences under G. L. (Ter. Ed.) c. 271, § 39. That statute relates to acts of agents, employees or servants of persons or corporations engaged in private business and not to acts of public officers. This interpretation is confirmed by the omission of St. 1962, c. 779, to provide for the repeal of § 39, whereas c. 779 repealed G. L. c. 268, § 8, which related to public officers and in the language of which the indictments were cast.

General Laws (Ter. Ed.) c. 268, § 8, which the defendants no longer cite, provides: "A legislative, executive, judicial, county or municipal officer who corruptly requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to him, under an agreement or with an understanding that his vote, opinion or judgment shall be given in any particular manner, or upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity . . . shall . . . be punished . . . ."

The differing language of G. L. (Ter. Ed.) c. 271, § 39, reads: "Whoever corruptly gives, offers or promises to an agent, employee or servant any gift or gratuity whatever, with intent to influence his action in relation to the business of his principal, employer or master; or an agent, employee or servant who corruptly requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself, under an agreement or with an understanding that he shall act in any particular manner in relation to the business of his principal, employer or master; . . . shall be punished . . . . No person shall be excused from attend-

ing, testifying or producing books, papers, contracts, agreements and documents before any court or in obedience to the subpoena of any court having jurisdiction of the offence described herein on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be liable to any suit or prosecution, civil or criminal, for or on account of any transaction, matter or thing concerning which he may testify or produce evidence, documentary or otherwise, before said court or in obedience to its subpoena or in any such case or proceeding.''

The final sentence of § 39 is the foundation of the defendants' main contention. Apart from the argument that the defendants are charged with violating § 39, it is urged that its immunity provision is made applicable by the fourth paragraph of Res. 1962, c. 146, which provides: ''The commission may require by summons the attendance and testimony under oath of witnesses and the production before it of books and papers relating to any matter being investigated by it pursuant to the provisions of this resolve. Such a summons may be issued by the commission . . . and shall be served in the same manner as summonses for witnesses in criminal cases issued on behalf of the commonwealth and all provisions of law relative to summonses issued in such cases shall apply to summonses issued under this resolve so far as applicable. Any justice of the supreme judicial court or of the superior court may upon application by the commission compel the attendance of witnesses summoned as aforesaid and the giving of testimony under oath before the commission in furtherance of any investigation under this resolve in the same manner and to the same extent as before said courts.''

We do not agree with the defendants' construction of c. 271, § 39, read in connection with Res. 1962, c. 146. The commission is not a court, and § 39 applies only to a ''court having jurisdiction of the offence.'' The commission did not have jurisdiction of the offence described in § 39. In

*Hopkins* v. *Commonwealth,* 3 Met. 460, 462, it was said by Chief Justice Shaw, "The word 'jurisdiction' (*jus dicere*) is a term of large and comprehensive import, and embraces every kind of judicial action upon the subject matter, from finding the indictment to pronouncing the sentence. . . . To have jurisdiction is to have power to inquire into the fact, to apply the law, and to declare the punishment, in a regular course of judicial proceeding."

The commission is merely authorized to investigate, find facts, make studies, and file reports which may be used as a basis for legislative action. It lacks power to apply the law or to prescribe punishment. To hold otherwise would raise serious constitutional doubts as to the separation of powers. Legislation must, if possible, be so interpreted as to avoid reasonable constitutional doubts. *Opinion of the Justices,* 341 Mass. 760, 785, and cases cited. *Lubell* v. *First Natl. Stores, Inc.* 342 Mass. 161, 164, and cases cited. *Bay State Harness Horse Racing & Breeding Assn. Inc.* v. *State Racing Comm.* 342 Mass. 694, 699.

In the view we take, we do not reach any constitutional issue. In our opinion the decisive question is one of statutory construction. Whether there is to be immunity for testimony is a matter of legislative intent. A witness has no constitutional guaranty of an option to testify or to claim immunity.

The language of Res. 1962, c. 146, concerns solely the procedural aspects of criminal law, such as the service of summonses and their effect, the method of conducting hearings, and the rights of witnesses. The commission itself lacks power to compel the attendance of witnesses or the production of books and papers, but must make application to either the Supreme Judicial Court or the Superior Court. See *Massachusetts Bonding & Ins. Co.* v. *Commissioner of Ins.* 329 Mass. 265, 279.

The legislative history of Res. 1962, c. 146, strongly indicates that the Legislature did not intend testimony before the commission to confer immunity. First, there is the analogy of Res. 1953, c. 100, which also created a crime com-

mission.[1]   From their similarity it is clear that the earlier resolve served as a model for the later one.   However, Res. 1953, c. 100, contained a provision for immunity from prosecution for persons required to testify or produce evidence. *Cabot* v. *Corcoran,* 332 Mass. 44, *S. C.* 333 Mass. 769.   *Corcoran* v. *Commonwealth,* 335 Mass. 29.   In the circumstances, the failure of Res. 1962, c. 146, to contain a similar express provision is highly significant.

A study of legislative bills of 1962 reinforces our conclusion.   In that year there were introduced at least twelve bills dealing with the subject of a crime commission: Senate Doc. No. 272, Senate Doc. No. 278, Senate Doc. No. 519, Senate Doc. No. 578, Senate Doc. No. 890, House Doc. No. 641, House Doc. No. 782, House Doc. No. 1151, House Doc. No. 2481, House Doc. No. 2485, House Doc. No. 3661, and House Doc. No. 3936.   Of these, all but three, namely, Senate Doc. No. 278, Senate Doc. No. 890, and House Doc. No. 1151, contained a specific provision for immunity.   Resolves 1962, c. 146, grew out of Senate Doc. No. 890, which was one of the bills not containing such a provision.   Senate Doc. No. 890 was substituted for House Doc. No. 3936, which earlier had been substituted for House Doc. No. 3661, both of which did contain such a provision.   This deletion of the provision is cogent basis for rejecting the view that by the language as to summonses in Res. 1962, c. 146, the Legislature nevertheless intended to incorporate substantially such a provision.

The pleas in bar were properly overruled.

*Orders affirmed.*

---

[1] This resolve was revived or continued in effect by Res. 1954, c. 80; Res. 1955, c. 9 and c. 147; and see Res. 1956, c. 110.