CHARLES BLAISDELL *vs.* COMMONWEALTH.

Suffolk.    January 6, 1977. — June 14, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS,
& LIACOS, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts.    *Constitutional Law,* Self-incrimination.    *Practice, Criminal,* Psychiatric examination.

Upon report without decision of a proceeding in the county court under
G. L. c. 211, § 3, to vacate an interlocutory order by a judge of the
Superior Court with which the petitioner was directed to comply
prior to trial of a capital case against him, this court reviewed the
order because it involved difficult questions of both a constitutional
and statutory nature which were of great import both to the petitioner and the Commonwealth. [755]
The constitutional privilege against self-incrimination is applicable to
a psychiatric examination of a criminal defendant by court order.
[757-762]
The protection afforded a defendant by way of immunity under G. L.
c. 233, § 23B, is not coextensive with the protection afforded by the
constitutional privilege against self-incrimination. [762-764] QUIRICO,
J., dissenting, with whom BRAUCHER, J., joined.
A defendant in a criminal case who voluntarily submits to psychiatric
interrogation as to his inner thoughts, the alleged crime, and other
relevant factors bearing on his mental responsibility and, on advice
of counsel, voluntarily proffers such evidence to the jury, waives his
constitutional privilege against self-incrimination with respect to a
court-ordered psychiatric examination. [764-766]
Where a defendant in a criminal case discloses his intention to interpose a defense of insanity at trial and to offer testimony of experts
who intend to rely in whole or in part on statements of the defendant pertaining to his mental state at or about the time of the commission of the crime, the judge may order the defendant to submit to
a psychiatric examination under certain terms and conditions by way
of an appropriate protective order. [766-769] QUIRICO, J., dissenting,
with whom BRAUCHER, J., joined.

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on October 14, 1975.

The case was reserved and reported by *Kaplan,* J.

*Francis J. DiMento (Thomas C. Cameron* with him)
for the plaintiff.

*Charles C. Dalton*, Assistant District Attorney, for the Commonwealth.

LIACOS, J. The plaintiff here, hereinafter called the defendant, awaits trial in the Superior Court for the county of Essex on an indictment for murder in the first degree. On November 1, 1973, the day after the alleged homicide, the defendant was examined at the Central District Court of Northern Essex by three psychiatrists, two of whom reported to the presiding judge of that court that the defendant was competent to stand trial. The examination in the District Court apparently was ordered under the provisions of G. L. c. 123, § 15.

On July 28, 1975, the Commonwealth filed a motion in the Superior Court by which it requested the defendant to disclose whether it was his intent to interpose a defense of insanity; if so, the Commonwealth further requested that he disclose the names of supporting witnesses and the circumstances giving rise to the defense. The Commonwealth also moved that if this defense was to be interposed the defendant be ordered to submit to psychiatric examination and evaluation. This motion was heard and the defendant's counsel consequently filed a written statement stating his intention to interpose the defense of insanity.

A further hearing on the remainder of the Commonwealth's motion was held on September 16, 1975. At that hearing the defendant, through his counsel, informed the court that he had disclosed to the Commonwealth the name of one psychiatrist who would testify on his behalf. The trial judge, relying on the statutory authority of G. L. c. 123, § 15, then allowed that part of the Commonwealth's motion which sought to have the defendant submit to a psychiatric examination on or before September 25, 1975. The judge also stated that if the defendant did not cooperate in the examination he would be foreclosed from raising the defense of insanity at trial. The defendant duly excepted and claimed appeal therefrom. He thereupon filed this petition with the county court seeking relief

Blaisdell *v.* Commonwealth.

under G. L. c. 211, § 3. The Superior Court judge stayed his order during the pendency of this petition. The single justice accepted jurisdiction and reserved and reported the questions set forth in the margin[1] to the full court.

Although we have stated that we will exercise our general superintendence powers under G. L. c. 211, § 3, to review criminal cases "[o]nly in the most exceptional circumstances," *Gilday* v. *Commonwealth*, 360 Mass. 170, 171 (1971), we do so here, as we did in *Gilday*, for the reasons therein stated. The issues here presented are similar in part to those raised in *Gilday*, where we upheld an order to disclose an intention to raise an insanity defense and an alibi defense but vacated that part of the order requiring pre-trial disclosure of names, addresses and dates of birth of witnesses pertaining to any proposed alibi defense.

The issues raised by the interlocutory order of the Superior Court judge, and the reservation and report of the single justice, involve difficult questions of both a constitutional and statutory nature. We have previously stated that "we can and should act 'at whatever stage in the proceedings it becomes necessary to protect substantive rights.'" *Myers* v. *Commonwealth*, 363 Mass. 843, 844 (1973), quoting from *Barber* v. *Commonwealth*, 353 Mass. 236, 239 (1967). The questions reserved and reported by the single justice involve matters of great import not only to the defendant but also to the Commonwealth. Thus, we feel it appropriate to exercise our powers under G. L. c. 211, § 3.

---

[1] "1. Where a murder defendant (1) has, on the Commonwealth's motion, disclosed that he presently intends to interpose a defense of insanity at trial, (2) has already been found competent to stand trial pursuant to a court-ordered psychiatric examination and (3) has sought no discovery from the Commonwealth, can he be foreclosed, consistently with his Fifth Amendment privilege against self-incrimination, from presenting at trial expert psychiatric testimony if he refuses to cooperate at a further psychiatric examination to determine criminal responsibility, ordered by a court under G. L. c. 123, § 15?

"2. If the defendant cooperates with the court-ordered psychiatric examination, to what extent can a report or the testimony of the psychiatrist be used at trial?"

The defendant makes three arguments here. He claims (1) the lower court's use of G. L. c. 123, § 15, as a "discovery device" runs counter to the purpose of the statute; (2) the order that the defendant submit to a psychiatric examination is "unprecedented and excessive in scope"; and (3) that the trial court's threat of sanctions should the defendant refuse to submit to psychiatric examination "chills" the exercise of his privilege against self-incrimination.

The first claim seems to us to be without merit. We note that G. L. c. 123, § 15, in its present form came about as a consequence of substantial revision of what formerly was known as the "Briggs Law" (G. L. c. 123, § 100A). See St. 1970, c. 888; St. 1971, c. 760; St. 1973, c. 569. To the extent the defendant argues that the statute in its present form authorizes a court to order psychiatric examination solely on the matter of whether a defendant should be put to trial as distinguished from the issue of whether the defendant lacked criminal responsibility at the time of the alleged offense, that argument is refuted by the express language of the statute. The language of the statute clearly authorizes not only examinations to determine competency to stand trial but also permits a psychiatric examination whenever the court "doubts whether a defendant in a criminal case . . . is criminally responsible by reason of mental illness or mental defect . . . ." G. L. c. 123, § 15 (a), as amended by St. 1971, c. 760, § 12. The statute also permits such an examination to be ordered "at any stage of the proceedings."

It is true, as pointed out by the defendant, that one of the purposes of the statute, as carried forward from its predecessor G. L. c. 123, § 100A, is to prevent putting to trial an individual who either is not competent at the time of trial or who was not criminally responsible for his otherwise wrongful acts. See Commonwealth v. Gray, 314 Mass. 96, 104 (1943); Commonwealth v. Devereaux, 257 Mass. 391, 396-397 (1926). Such a statutory "screening" purpose is not inconsistent with the additional purpose of providing to the court and to the Commonwealth helpful medical

and psychiatric information at any point in the proceedings pertaining to the trial issue of the defendant's criminal responsibility. Whether, however, such a statutory purpose intrudes on rights constitutionally protected is another matter.

Before reaching that question, we turn briefly to the defendant's claim that the order in this case was "excessive" in scope. To the extent the defendant relies on the claim that this is an improper discovery order without reciprocity, issued in the absence of rule or statute authorizing discovery, we concur. See *Gilday* v. *Commonwealth,* 360 Mass. 170 (1971); *Wardius* v. *Oregon,* 412 U.S. 470 (1973). We believe, however, that our discussion of the applicable constitutional and statutory provisions will provide a suitable framework for such an order to be devised appropriately.

The most significant — and difficult — aspect of the defendant's argument is the assertion that the possible preclusion of expert psychiatric testimony in support of his insanity defense constitutes an impermissible "chill" on the exercise of his privilege against self-incrimination.

This assertion implies the applicability of the privilege against self-incrimination in this context; a principle of law which has not been decided in this Commonwealth but which has produced varying approaches in other jurisdictions. See, e.g., *United States* v. *Albright,* 388 F.2d 719 (4th Cir. 1968); *French* v. *District Court,* 153 Colo. 10 (1963); *People* v. *English,* 31 Ill. 2d 301 (1964); *State* v. *Buzynski,* 330 A.2d 422 (Me. 1974); *State* v. *Whitlow,* 45 N.J. 3 (1965); *Lee* v. *County Court,* 27 N.Y.2d 432, cert. denied, 404 U.S. 823 (1971); *State ex rel. LaFollette* v. *Raskin,* 34 Wis. 2d 607 (1967). The question also has provoked much debate in scholarly journals. See, e.g., Berry, Self-Incrimination and the Compulsory Mental Examination: A Proposal, 15 Ariz. L. Rev. 919 (1973); Note, Requiring a Criminal Defendant to Submit to a Government Psychiatric Examination: An Invasion of the Privilege Against Self-Incrimination, 83 Harv. L. Rev. 648 (1970); Danforth, Death Knell for Pre-Trial Mental Ex-

aminations? Privilege Against Self-Incrimination, 19 Rutgers L. Rev. 489 (1965); Comment, Compulsory Mental Examinations and the Privilege Against Self-Incrimination, 1964 Wis. L. Rev. 671; Note, Pre-Trial Psychiatric Examination: A Conflict with the Privilege Against Self-Incrimination? 20 Syracuse L. Rev. 738 (1969).

Whether a constitutional right is "chilled" as the defendant claims by the imposition of a sanction of the sort proposed by the trial judge here, depends on the threshold questions of (1) whether the right claimed applies; and (2) if so, whether the proposed State action infringes on it. The question of what sanctions, if any, are permissible need not be reached unless both questions are resolved in a way favorable to the defendant's claim. See generally, Note, The Preclusion Sanction — A Violation of the Constitutional Right to Present a Defense, 81 Yale L.J. 1342 (1972).

The Fifth Amendment to the Constitution of the United States provides: "No person ... shall be compelled in any criminal case to be a witness against himself...." Similarly, Part I, art. 12 of the Declaration of Rights of the Massachusetts Constitution provides: "No subject shall ... be compelled to accuse, or furnish evidence against himself."

In order for the privilege to apply, at least two factors need be established. The privilege does not bar the State's use of evidence which incriminates the defendant, but rather the compelled production of such evidence from the defendant. See *Malloy* v. *Hogan*, 378 U.S. 1 (1964); *Williams* v. *Florida*, 399 U.S. 78, 106 (1970) (Black, J., concurring in part and dissenting in part). See also, *Andresen* v. *Maryland*, 427 U.S. 463 (1976); *Couch* v. *United States*, 409 U.S. 322 (1973). It is clear that a court-ordered psychiatric examination is such a form of compelled production. Whether viewed as a discovery order or otherwise, this factor differentiates this case from those involving notice of alibi statutes. See, e.g., *Wardius* v. *Oregon, supra*; *Williams* v. *Florida, supra*. Second, the privilege is implicated only when the evidence sought is of a testimonial

character; the privilege does not apply to any evidence falling outside that generic classification. *Holt* v. *United States*, 218 U.S. 245 (1910).

A number of courts considering this issue have taken the view that since the content of a defendant's statements to a psychiatrist is not as significant as the pattern of mind the statements demonstrate, the testimony of the psychiatrist hinges not on testimonial statements of a defendant but rather on "verbal acts" or "real evidence." See, e.g., *United States* v. *Trapnell*, 495 F.2d 22, 24 (2d Cir.), cert. denied, 419 U.S. 851 (1974); *United States* v. *Handy*, 454 F.2d 885, 889 (9th Cir. 1971), cert. denied, 409 U.S. 846 (1972). Under this view, the privilege against self-incrimination is not implicated or violated since — or so the argument goes — the "evidence" obtained, even if by compulsion, is no different in nature from fingerprints, voice exemplars, handwriting exemplars, blood samples, and similar nontestimonial evidence held not to be protected by the privilege. See, e.g., *Gilbert* v. *California*, 388 U.S. 263 (1967); *United States* v. *Wade*, 388 U.S. 218 (1967); *Schmerber* v. *California*, 384 U.S. 757 (1966); *Holt* v. *United States, supra.*

An understanding of the correctness of these views and of the applicability of the privilege to compelled psychiatric examinations requires at the outset an understanding as to the nature of the psychiatric examination and a concomitant understanding of the nature and quality of statements given in the course of the examinations. Matters which may be relevant to a defendant's physiological condition, where objective testing devices such as X-rays, blood tests and electroencephalographs may be relevant, are decidedly different from a psychiatric inquiry into the existence or nonexistence of a mental disease or a defect, which may preclude a defendant from being criminally responsible for his actions. The primary diagnostic source in such a situation often is that which the examiner may glean from the nature and content of the defendant's statements. Not only may a defendant in such an examination be called on to recite his life history, emotions,

feelings, thoughts and views as to relations with others, but, more importantly, to render the examination completely effective, he may well have to talk about the crime charged itself as well as acts, events and emotions relative to its commission. See *Danforth, supra*; Note, 83 Harv. L. Rev., *supra* at 652. From this, it is clear that any order that a defendant fully cooperate with the psychiatrist may well result in disclosure of significant information which will constitute either a full confession of the acts charged in the indictment or result in admissions which may be probative as to those acts. In addition, such statements may provide leads, heretofore unavailable to the prosecution which will lead to the discovery of other inculpatory evidence. At a minimum, such statements may provide a basis for the impeachment of a defendant. Just as significantly, the result of such a compelled examination often is that a defendant is required to put into the hands of the State crucial evidence necessary to his conviction — i.e., evidence as to his mental capacity — which goes to an essential part of the government's case against him in its effort to establish the requisite mens rea or mental responsibility for his alleged acts. *Lee* v. *County Court, supra* at 439. Psychiatric expert testimony based on a defendant's compelled statements clearly would be the "fruits" of such compelled testimonial communication.

It is clear that statements made during the course of the examination of the above nature are "testimonial" in every sense of the word, cf. *Thornton* v. *Corcoran*, 407 F.2d 695 (D.C. Cir. 1969). Thus, compelled utterances during the course of the examination must be viewed as implicating the privilege. *United States* v. *Alvarez*, 519 F.2d 1036 (3d Cir. 1975). Cf. *French* v. *District Court*, 153 Colo. 10 (1963). The values protected by the privilege[2] are directly threatened absent a recognition by the

2 "The privilege against self-incrimination 'registers an important advance in the development of our liberty — "one of the great landmarks in man's struggle to make himself civilized." ' ... It reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation,

Blaisdell *v.* Commonwealth.

courts that a psychiatric interrogation by court order is no less inherently intrusive — and perhaps even more so — than an ordinary custodial interrogation by law enforcement personnel. *Miranda* v. *Arizona,* 384 U.S. 436 (1966). See *Murphy* v. *Waterfront Comm'n,* 378 U.S. 52, 55 (1964). See also Note, 83 Harv. L. Rev., *supra* at 651-660 (1970); Aronson, Should the Privilege Against Self-incrimination Apply to Compelled Psychiatric Examinations? 26 Stan. L. Rev. 55, 58-62 (1973).

Where the privilege is applicable, the constitutionally required result is that no balancing of State-defendant interests is permissible to facilitate the admittedly difficult burdens of the prosecution. See *United States* v. *Watson,* 423 U.S. 411 (1976). The protection of the constitutionally protected privilege is not one that yields to "reasonable" intrusions. In this sense the privilege is unlike the more limited protections of the Fourth Amendment prohibition against searches and seizures that are "unreasonable." See *Katz* v. *United States,* 389 U.S. 347 (1967). Instead, where the privilege applies, it may be overcome only by either (1) a constitutionally adequate grant of immunity, *Kastigar* v. *United States,* 406 U.S. 441 (1972); or (2) a valid waiver of the privilege by the person who possesses it, *Rogers* v. *United States,* 340 U.S. 367 (1951).

Consideration of whether a waiver can be found is unnecessary if there is a constitutionally sufficient immunization of the defendant, either by order of a court (which is not at issue here) or by statutorily created rights which

---

perjury or contempt; our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates 'a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load,' ... our respect for the inviolability of the human personality and of the right of each individual 'to a private enclave where he may lead a private life,' ... our distrust of self-deprecatory statements; and our realization that the privilege, while sometimes 'a shelter to the guilty,' is often 'a protection to the innocent' [citations omitted]." *Murphy* v. *Waterfront Comm'n,* 378 U.S. 52, 55 (1964).

have the same effect. The Commonwealth contends that G. L. c. 233, § 23B, does this. G. L. c. 233, § 23B, as amended by St. 1970, c. 888, § 27, provides: "In the trial of an indictment or complaint for any crime, no statement made by a defendant therein subjected to psychiatric examination pursuant to sections fifteen or sixteen of chapter one hundred and twenty-three for the purposes of such examination or treatment shall be admissible in evidence against him on any issue other than that of his mental condition, nor shall it be admissible in evidence against him on that issue if such statement constitutes a confession of guilt of the crime charged."

Apart from the use of a defendant's statements on the issue of his mental condition, this statute resolves the problem in this case if the protections afforded by it are coextensive with the constitutional protections afforded by the privilege. *Counselman* v. *Hitchcock,* 142 U.S. 547 (1892). *Commonwealth* v. *Benoit,* 347 Mass. 1 (1964). But the statute can only be viewed as displacing the privilege if it provides the necessary protections, even though its existence may afford other substantial benefits to a defendant.

While the privilege operates to bar government compelled testimonial incrimination, *Malloy* v. *Hogan,* 378 U.S. 1 (1964); *Miranda* v. *Arizona,* 384 U.S. 436 (1966); *Jones* v. *Commonwealth,* 327 Mass. 491 (1951), such testimony may be compelled if the person being so compelled suffers no injury, either directly or indirectly, through the use of such statements or the product of those statements in a proceeding against him. *Counselman* v. *Hitchcock, supra.* Cf. *Emery's Case,* 107 Mass. 172 (1871). The prosecution must be precluded from introducing any other evidence which it discovers solely as the result of a defendant's statements to the court-appointed psychiatrist. See *Kastigar* v. *United States, supra; Murphy* v. *Waterfront Comm'n, supra.*

Since the protection afforded a defendant by way of immunity must be coextensive in scope with that afforded by the privilege, statements short of confessions of guilt

Blaisdell *v.* Commonwealth.

must also be immunized lest they become a "link in the chain of evidence" which properly could be used to invoke the privilege. *Hoffman* v. *United States*, 341 U.S. 479, 486 (1951). See also *Commonwealth* v. *Harris*, 371 Mass. 462 (1976); *Commonwealth* v. *Prince*, 313 Mass. 223, 229 (1943), aff'd on other grounds, 321 U.S. 158 (1944). Last, since statements obtained under compulsion of court order are not voluntary, it would appear that such statements should not be available to the prosecution even for limited impeachment purposes. Cf. *Harris* v. *New York*, 401 U.S. 222 (1971).

Viewed in this context, the protections afforded by G. L. c. 233, § 23B, are obviously not coextensive with the protections afforded by the privilege. This is not to say it is inapplicable or that the statute, properly construed, does not go a substantial way toward resolving the problem at hand. To the extent that the statute precludes the use of a defendant's statements "on any issue other than that of his mental condition" and bars the use of statements which "constitute[s] a confession of guilt of the crime charged," it does afford some protections to a defendant. For these purposes, we would construe the word "confession" to include inculpatory statements constituting admissions short of a full acknowledgement of guilt. Such a construction not only affords the greatest possible protection to a defendant in such circumstances but also seems consistent with the legislative intent as expressed in similar legislation. See G. L. c. 233, § 20B, referring to a "confession or *admission* of guilt" (emphasis supplied). Similarly, we would interpret the statute to preclude the use of evidence discovered as "fruits" of his compelled statements, cf. *Harrison* v. *United States*, 392 U.S. 219, 222 (1968); see *Michigan* v. *Tucker*, 417 U.S. 433, 447 (1974), as well as the possible use of his involuntary statements made in the course of the examination for purposes of impeachment. *Simmons* v. *United States*, 390 U.S. 377 (1968). But, even with this construction, § 23B falls short of the mandated equivalent of the privilege. The statute does not bar disclosure of a defendant's statements nor

their potential use for other purposes by the prosecution or the State. General Laws c. 233, § 20B, makes this clear. Most importantly, to the extent the constitutional privilege protects the defendant from furnishing evidence bearing on his mental or emotional condition, neither § 20B nor § 23B affords him equivalent protection. Consequently, the statute (§ 23B) while helpful cannot serve as the basis for asserting that a defendant is adequately protected. Thus, unless a waiver of the privilege by the defendant can be shown, the order of the Superior Court judge must be viewed as entailing an impermissible infringement of that privilege. We turn next to the question of waiver.

The privilege against self-incrimination may be waived by the person holding that privilege. *Rogers* v. *United States*, 340 U.S. 367 (1951). When a defendant in a criminal proceeding voluntarily takes the stand to testify that act is a waiver of his entire privilege as to any facts material to the crime for which he is being tried. *Jones* v. *Commonwealth*, 327 Mass. 491 (1951). The waiver of such a constitutionally protected right must be an intelligent and knowing one. *Johnson* v. *Zerbst*, 304 U.S. 458 (1938). *Miranda* v. *Arizona*, 384 U.S. 436 (1966). The mere fact that a defendant gives notice of an intention to interpose a defense of insanity cannot be construed as a waiver of his privilege against self-incrimination for a waiver of that privilege comes about in context of a criminal trial only when the defendant takes the stand to give testimonial evidence in his own behalf. Nor is the notice of such a defense a basis of holding that he must involuntarily surrender the protections of the privilege for reasons of expediency, fairness or reciprocity. While such concepts may apply to areas where the privilege has no application, e.g., alibi defenses, they have no valid application to an area protected by the privilege. Cf. *Commonwealth* v. *Edgerly, ante*, 337 (1977).[3] A defendant seeking to assert the

---

[3] To the extent Rule 14 of the Massachusetts Proposed Rules of Criminal Procedure for District and Superior Courts purports to treat

Blaisdell *v.* Commonwealth.

defense of insanity may do so in a number of ways without testifying himself or implicating the privilege (or its possible waiver) in any way. A few examples will suffice to illustrate this point. A defendant may have a prior history of mental disorders and treatment and may offer evidence of the same through medical records with or without expert witnesses; see *Commonwealth* v. *Mutina,* 366 Mass. 810, 812-815 (1975); he might argue that the very facts of the alleged crime create an inference of mental disease or defect; lay witnesses may testify as to their observations of the defendant prior to, during or subsequent to the time of the alleged crime; evidence of congenital or physical factors affecting his mental capacity, e.g., brain scan, E.E.G. or CAT scan results, may be offered. These, and other approaches by a defendant to raise the issues and defeat the presumption of sanity, see *Commonwealth* v. *Mutina, supra,* all would have in common the fact that none involves testimonial statements by a defendant *on or off* the witness stand as to the event about which he stands criminally charged. The Commonwealth has the burden of proof to establish a defendant's mental responsibility beyond a reasonable doubt, *Commonwealth* v. *Kostka,* 370 Mass. 516 (1976). We have indicated that the Commonwealth may rely on the unrebutted presumption of sanity to carry its burden, or thé underlying facts behind it for a jury finding in its favor. See *Commonwealth* v. *Kostka, supra,* and *Commonwealth* v. *Mutina, supra.* To the extent it may become desirable for the Commonwealth to come forward with affirmative evidence of sanity, see *Commonwealth* v. *Walker,* 370 Mass. 548, 584 (1976) (Hennessey, C.J., and Kaplan, J., dissenting in part) (Liacos, J., concurring), it frequently can do so without relying on testimonial statements of a defendant. For example, the testimony of lay witnesses who observed a defendant at

---

insanity and alibi defenses on a similar basis, we venture no view at this time as to the validity of such an approach. Those rules are now before the court pending further consideration. See Fed. R. Crim. P. 12.2.

relevant times, the evidence as to the circumstances of the commission of the crime, the lack of any medical history, the observed demeanor of a defendant by psychiatrists who can base their opinions on various factors apart from a defendant's compelled statements are means, among others, by which such evidence may be put before the jury.

If, on the other hand, a defendant voluntarily submits to psychiatric interrogation as to his inner thoughts, the alleged crime and other relevant factors bearing on his mental responsibility and, on advice of counsel, voluntarily proffers such evidence to the jury, we feel that the offer of such expert testimony based in whole or in part on a defendant's testimonial statements constitutes a waiver of the privilege for such purposes. See Aronson, Should the Privilege Against Self-incrimination Apply to Compelled Psychiatric Examinations? 26 Stan. L. Rev. 55, 70-72 (1973). In short, by adopting this approach, a defendant who seeks to put in issue his statements as the basis of psychiatric expert opinion in his behalf opens to the State the opportunity to rebut such testimonial evidence in essentially the same way as if he himself had testified. *United States* v. *Baird,* 414 F.2d 700 (2d Cir. 1969), cert. denied, 396 U.S. 1005 (1970). Under such a view there would be no violation of his privilege should the court then order him under c. 123, § 15, to submit to psychiatric examination so that the jury may have the benefit of countervailing expert views, based on similar testimonial statements of a defendant in discharging its responsibility of making a true and valid determination of the issues thus opened by a defendant. *Pope* v. *United States,* 372 F.2d 710, 720-721 (8th Cir. 1967), vacated on other grounds, 392 U.S. 651 (1968). *United States* v. *Albright,* 388 F.2d 719, 726 (4th Cir. 1968). *State* v. *Whitlow,* 45 N.J. 3 (1965). *Lee* v. *County Court,* 27 N.Y.2d 432, cert. denied, 404 U.S. 823 (1971). See *United States* v. *Alvarez,* 519 F.2d 1036, 1046 (3d Cir. 1975).

We think it appropriate to consider here the additional question of whether the Commonwealth must perforce wait until the waiver we have described occurs during the

course of the trial. To require the Commonwealth to wait until a waiver formally occurs may well cause it to be disadvantaged in meeting the issues raised by a defendant's evidence by virtue of the fact that its expert witnesses will lack adequate time to examine properly a defendant and his evidence in order to prepare for trial. Alternatively, a continuance of the trial may cause needless expense to the Commonwealth, unnecessary inconvenience to the court and to the jurors, and disruption of the progress of the trial which may cause harm to either the prosecution or the defense. To require the Commonwealth to wait until such a waiver occurs at trial seems not only inexpedient and unwise but also unnecessary.

Nothing we have said here precludes a judge from requiring a defendant to disclose before trial whether he intends to interpose the defense of insanity at trial. *Gilday* v. *Commonwealth*, 360 Mass. 170 (1971). Nor is there anything in the privilege against self-incrimination which precludes an order requiring a defendant to reveal on motion of the prosecution the information of (a) whether a defendant pursuant to such defense intends to offer expert testimony thereon; (b) the names and addresses of such expert witnesses as the defense intends to call; (c) whether a defendant's experts intend to rely in whole or in part on statements of the defendant pertaining to his mental state at or about the time of the commission of the alleged crime or as it may be otherwise relevant to the issue of his mental responsibility therefor. Such matters need only meet the requirements of due process and reciprocity as outlined most recently in *Commonwealth* v. *Edgerly, supra.* If the defendant's response to the third part of such an order is in the negative, the judge need go no further.

Should the response to the third part of the order be in the affirmative, or further inquiry or developments indicate a reasonable likelihood that such will be the case, the judge may order the defendant to submit to psychiatric examination under G. L. c. 123, § 15, with the following terms and conditions by way of an appropriate protective

order: (1) The defendant shall be required to submit to
psychiatric examination, including physical examination
and such physiological testing as the court-appointed psy-
chiatrist deems necessary to obtain a sufficient basis to
form an opinion on the defendant's mental capacity at the
time of the commission of the alleged offense, but no ex-
amination based on the defendant's statements shall be
made unless based on a finding by the court that (a) the
defendant presently intends to offer psychiatric evidence
at trial based on his own statements, or (b) there is a rea-
sonable likelihood that the defendant will offer such evi-
dence at trial; (2) The experts conducting the examina-
tion ordered by the court may not reveal to the prosecution
or anyone acting in its behalf any evidence, statements,
confessions or admissions obtained from the defendant
except evidence derived from solely physical or physiologi-
cal observation or tests, except as ordered by the court;
(3) Psychiatrists who conduct the examination ordered
by the court shall file a written report of their findings
with the court including a specific statement of what the
basis of such findings may be, and such report shall not
be available to either prosecution or defense unless, on
inquiry by the court, the court determines that it does
not contain any matter, information or evidence based on
the defendant's testimonial statements. In such event the
court may order the report released to both prosecution
and defense. If the report contains matter within the scope
of the privilege, it shall be sealed and shall not be avail-
able to either party until such time during the course of
the trial as the defendant raises the issue of insanity and
makes clear to the court his intent either (a) to testify in
his own behalf or (b) to place in evidence the testimony
of psychiatric witnesses whose testimony will be based
in whole or in part on the defendant's extrajudicial or
judicial statements. To the extent that a psychiatric re-
port filed with the court contains both privileged and non-
privileged matter, the court may, at such time as it deems
appropriate, allow disclosure of only the nonprivileged as-
pects thereof, if feasible; (4) All nontestimonial evidence

obtained from the defendant by virtue of examination shall be admissible on behalf of either party, see *People* v. *English,* 31 Ill. 2d 301 (1964); (5) Court-appointed psychiatrists may testify as to their opinion based on the defendant's testimonial statements only if the defendant offers testimony based on his statements but nothing herein shall preclude expert testimony given on any other basis; (6) Government psychiatric testimony in any event shall be given in a manner consistent with the requirements of G. L. c. 233, § 23B; (7) Refusal of a defendant to submit to such examination under the terms and conditions of an order based hereon shall authorize the court, if the circumstances warrant, to prescribe such remedies as may seem fair, just and reasonable in the circumstances, which may include the preclusion of any of the defendant's expert evidence based on statements of the defendant or the allowance of evidence of his refusal to submit to such examination. Cf. *State* v. *Whitlow, supra; United States* v. *Baird, supra.*

Psychiatric examinations may be ordered under G. L. c. 123, § 15, which do not involve the problems here discussed and which may not require such orders to be utilized. See *People* v. *English, supra.* Alternatively, where the issue involved is competence to stand trial rather than criminal responsibility for the crime alleged, the factual determinations and legal issues are significantly different. See *Commonwealth* v. *Vailes,* 360 Mass. 522 (1971). Examinations ordered by the court under G. L. c. 123, § 15, within the constraints of G. L. c. 233, § 23B, properly limited to the issue of competency to stand trial, would not ordinarily involve the problems of privilege here described.

We recognize that the circumstances of each case may require a degree of flexibility by trial judges in order to insure the efficiency of the courts and to protect the interests of both parties. Consequently, what we have set forth here may require adaptation from time to time. As the record now stands we answer the questions reported to us by the single justice as follows: to question 1: "No";

to question 2: "The testimony or report of the psychiatrist may be used in a fashion consistent with our rules of evidence and under the guidelines set forth in this opinion."

This matter is to be returned to the single justice for an order to issue setting aside the trial judge's order and remanding the matter to the Superior Court for such further proceedings as may be consistent with this opinion.

*So ordered.*

QUIRICO, J. (with whom Braucher, J., joins, dissenting in part). The report of the single justice presents two important questions arising from an order of a judge of the Superior Court that the defendant in a criminal proceeding submit to a psychiatric examination pursuant to G. L. c. 123, § 15, and from statements made by the judge concerning the sanctions which he might impose on the defendant if he should fail to cooperate in the examination.

I respectfully dissent from the court's answer to the second question. That question is: "If the defendant cooperates with the court-ordered psychiatric examination, to what extent can a report or the testimony of the psychiatrist be used at trial?" The court engages in a lengthy discussion of the possibility that a confession, admission or other inculpatory statement may be made by the defendant during the course of the examination. It then concludes that such a statement or its fruits might be introduced in evidence against the defendant at his trial, and that his Fifth Amendment privilege against self-incrimination would at that point be violated. The court therefore prescribes detailed procedural steps, including impoundment, to prevent the prosecution from having access to the psychiatric report unless the defendant elects to testify himself or to present psychiatric expert testimony based on his statements to the psychiatrist. The court's answer to the second question is summarized as follows: "The testimony or report of the psychiatrist may be used in a fashion consistent with our rules of evidence and under the guidelines set forth in this opinion."

I believe that the answer to the second question should be based on the provisions of G. L. c. 233, § 23B, as amended by St. 1970, c. 888, § 27, to the effect that: "In the trial of an indictment or complaint for any crime, *no statement made by a defendant therein subjected to psychiatric examination* pursuant to [G. L. c. 123, §§ 15 or 16] for the purposes of such examination or treatment *shall be admissible in evidence against him on any issue‧ other than that of his mental condition, nor shall it be admissible in evidence against him on that issue if such statement constitutes a confession of guilt of the crime charged*" (emphasis supplied). I read that language to protect the defendant from the use against him of his own inculpatory statements, or the fruits thereof, for any purpose, and to limit the use of any other statements made by him to the issue of his mental condition. In my opinion the legal effect of the statute is to give to the defendant an immunity fully commensurate with any Fifth Amendment right of which he might otherwise be deprived by compelling him to undergo the psychiatric examination and the interrogation involved therein. I see no constitutional infirmity in the statute.

I would therefore answer the second question in a manner which could be summarized as follows: "No statement made by the defendant constituting a confession or admission of guilt of the crime charged is admissible in evidence for any purpose, whether as part of the report of the psychiatrist or otherwise; and the report or testimony of the psychiatrist of any other statements by the defendant shall be admissible only on the issue of his mental health. The fruits of any inadmissible statement are equally inadmissible." If a question arises on the admissibility of any statement or evidence which the defendant contends is inadmissible because it is an inculpatory statement made by him to a psychiatrist in the course of an examination ordered by the court, or because it is the fruits of such a statement, the trial judge can hear and decide the matter in the absence of the jury, just as is done frequently on evidentiary rulings. The action

required by the trial judge would be similar to that when proffered evidence is objected to for a variety of other reasons, e.g., that it was obtained by a warrantless or otherwise unlawful search or in violation of the rule of *Miranda* v. *Arizona,* 384 U.S. 436 (1966), or that an identification was made in violation of the rule of *United States* v. *Wade,* 388 U.S. 218 (1967).

I would rely to a greater degree than does the court on the experience and demonstrated competence of trial judges to take whatever steps may be necessary, under present procedures, to insure to defendants and the public the full measure of benefits and protection which the Legislature intended for them by the enactment of G. L. c. 233, § 23B. I would not add further to the already seemingly interminable course of criminal prosecutions by mandating yet another layer of time consuming procedures which, if needed, might warrant consideration under the court's rule making power rather than in a judicial opinion.