## Commonwealth *vs.* David Scott Harvey.

Essex. April 7, 1986. — June 25, 1986.

Present: Hennessey, C. J., Wilkins, Abrams, Nolan, & O'Connor, JJ.

*Homicide. Insanity. Kidnapping. Practice, Criminal,* Psychiatric examination, Fair trial, Duplicitous convictions. *Waiver. Error,* Harmless. *Evidence,* Other offense, Relevancy and materiality, Intent.

At a point in a criminal trial before the defendant had introduced any evidence on the issue of mental impairment, the prosecutor's cross-examination of the defendant and introduction of evidence obtained as a result of a court-ordered psychiatric examination was improper; however, the defendant suffered no prejudice as a result, where the defendant subsequently offered expert psychiatric testimony based in part on statements made by the defendant, thus waiving his constitutional privilege against self-incrimination with respect to the court-ordered examination. [808-809]

At a murder trial during which the defendant claimed that the shooting in question was accidental, the judge did not abuse his discretion in admitting testimony respecting a prior shooting incident, where the testimony was relevant to establish the defendant's intent and to rebut his defense of accident, and where the judge gave appropriate limiting instructions. [809-810]

At the trial of an indictment charging the defendant with the murder of a young boy whose death was caused by shooting, the judge did not err in permitting a pathologist to testify regarding post-mortem injuries inflicted to the victim's body. [810]

On appeal from convictions of first degree murder and kidnapping, this court held that kidnapping used as a means to facilitate another crime was not necessarily merged in the substantive crime, and, therefore, found no merit to the defendant's contention that the convictions for murder and kidnapping were duplicitous. [810-811]

Indictments found and returned in the Superior Court Department on April 11, 1984.

The cases were tried before *Robert A. Barton,* J.

*John P. McGloin* for the defendant.

*Edward F. Connelly,* Assistant District Attorney (*Dyanne Klein Polatin,* Assistant District Attorney, with him) for the Commonwealth.

NOLAN, J. On April 11, 1984, an Essex County grand jury returned two indictments charging the defendant, David Scott Harvey, with kidnapping and murder in the first degree. On December 3, 1984, the defendant's trial commenced before a judge and a jury in the Superior Court in Essex County. The defendant was convicted of both crimes.

On appeal, the defendant argues that (1) the prosecutor improperly used information contained in the defendant's records from his admissions to Bridgewater State Hospital and thereby violated his constitutional rights; (2) the judge erred in admitting evidence of the defendant's prior misconduct on the day of the shooting; (3) the judge erred in admitting evidence that the defendant inflicted post-mortem injuries to the victim's body; (4) the judge erred in refusing to dismiss the kidnapping indictment or to instruct the jury that they should find the defendant not guilty of kidnapping if they found that the kidnapping was incidental to the murder; and, finally, the defendant urges the court to exercise its power under G. L. c. 278, § 33E (1984 ed.), to order a new trial or to reduce the defendant's conviction to murder in the second degree. After reviewing the entire record in accordance with our obligation under G. L. c. 278, § 33E, we find no reversible error, we decline to reduce the verdict of murder in the first degree, and we affirm the defendant's convictions. The relevant facts are summarized as follows.

On November 28, 1983, the body of five-year old David Wright was found in a wooded area near his home in Beverly. The boy's death was caused by a single .22 caliber bullet which passed through his head from near the right temple and to behind his left ear. The defendant initially denied involvement in the killing. At trial, however, he admitted shooting the boy, but claimed that the rifle he was using accidentally fired, and that he did not intend the boy's death.

On November 29, 1983, the defendant was ordered to Bridgewater State Hospital for a criminal competency and re-

sponsibility evaluation. See G. L. c. 123, § 15 (*b*) (1984 ed.). During pretrial proceedings, defense counsel informed the judge that psychiatric evidence might be offered on the issue of the defendant's mental impairment. See *Commonwealth* v. *Dunton, ante* 101, 103-104 (1986); *Commonwealth* v. *Gould,* 380 Mass. 672 (1980). The Bridgewater psychiatrist who examined the defendant noted that he appeared to be competent to stand trial. However, the defendant denied any involvement in the crime, and on the advice of his attorney he refused to discuss the incident. Accordingly, a determination as to criminal responsibility could not then be reached.

On February 21, 1984, the defendant again was ordered to undergo a criminal competency and responsibility evaluation. The defendant continued to maintain his silence with respect to the incident. The second examination produced essentially the same results as the previous examination.

The defendant underwent a third Bridgewater examination in March, 1984. At the beginning of the interview, as with each previous interview, the defendant was told that the evaluation was court-ordered. He was also told that the interview was not confidential and that "he was not required to answer any questions he did not wish to answer." He was further informed that the psychiatrist might at some time in the future be testifying in court regarding the interview and that he was not required to participate in the interview. At this time, the defendant recited to the psychiatrist his version of the events leading to David Wright's death. The psychiatrist prepared a report which was impounded by the Superior Court. At the conclusion of the Commonwealth's case, the prosecutor renewed an earlier pretrial motion to have the report released. The defendant's attorney did not object to the release of the report. The judge allowed the Commonwealth's motion. At the same time, the defense counsel gave the prosecutor a copy of a report prepared by the psychiatrist retained by the defendant.

The defendant testified on his own behalf at trial. On direct examination, he described for the jury his version of what had occurred on the day of the shooting. In relevant part, he testified

that he met his friend, Karl Sando, at approximately 8:45 A.M. on November 28, 1983. He stated that Sando had a rifle with him when they met in the morning and that he and Sando intended to go shooting that day. He further testified that, after meeting, he and Sando both smoked marihuana and then began shooting the rifle. Afterward, the defendant and Sando proceeded to North Beverly to meet two male friends. Once they reached North Beverly, they went to the apartment of the sister of one of the friends. The defendant left the apartment shortly thereafter to purchase some beer and liquor. He returned and the four began drinking.

The defendant testified that, after they finished drinking, all four individuals left the apartment and went to Wenham Lake to target practice with the rifle. The defendant stated that the group continued to drink beer after they arrived at the lake. The two friends that the defendant and Sando had met in North Beverly departed from the lake at approximately 1 P.M.

During cross-examination, the prosecutor asked the defendant whether he had fired the rifle while in the apartment. Defense counsel objected, and at a bench conference argued that the prosecutor had obtained the information from the defendant's Bridgewater psychiatric report. The judge overruled the objection and cross-examination continued. The defendant admitted shooting the rifle while he was at the apartment. The prosecutor then asked the defendant whether he suggested to Sando while they were at the apartment that they should fire the rifle at a man on the roof of a nearby restaurant. The defendant denied making any such statement. At this time, the judge called counsel to the bench and asked the prosecutor what factual basis she had for asking this question. The prosecutor stated that Sando told her that the defendant had made the statement. The judge further inquired whether the prosecutor knew of this information before she received the Bridgewater report. The prosecutor stated that she did not know of this matter prior to receiving the report and requested permission to make a statement for the record. The judge allowed the prosecutor to make a statement.[1]

---

[1] The prosecutor's statement was as follows: "Last evening I read through the report that was released to me from this Court. There was mention in that

When cross-examination continued, the prosecutor asked the defendant whether he shot the rifle at his two friends as they were departing Wenham Lake. The defendant said he did not. At the conclusion of the prosecutor's cross-examination, the judge called another side bar conference. The judge then asked the prosecutor who would testify that the defendant shot at his two friends as they departed from the lake. The prosecutor stated that the two friends were present in the court room. The judge further inquired as to how the prosecutor came to know about this shooting incident. The prosecutor informed the judge that she learned of the shooting incident from speaking with Sando as well as the two friends. On further inquiry, the judge was informed that the conversation with Sando occurred after the Bridgewater report was released. The judge then determined that the prosecutor had violated the principles enunciated by this court in *Blaisdell* v. *Commonwealth,* 372 Mass. 753 (1977). The judge, therefore, stated that the prosecutor could not call Sando as a rebuttal witness. Sando was allowed to testify, however, after the defendant introduced testimony through his own psychiatrist regarding the shooting incidents at the apartment and the lake. In addition, the defendant's psychiatrist also testified that the defendant did not possess the mental capacity to "deliberately evaluate the pros and cons of carrying out an aggressive act like murder." We now address the defendant's arguments.

1. *Psychiatric records.* In *Blaisdell* v. *Commonwealth, supra,* we set forth the guidelines which should be followed for a court-ordered psychiatric examination of a defendant. In that case, we said that a court may order an examination if it is determined that the defendant intends to or that there is a reasonable likelihood that the defendant will offer psychiatric testimony based on the defendant's own statements.[2]

---

report of shooting — not shooting, the gun going off accidentally inside the apartment. I called Karl Sando and I asked him if any shots were fired from that gun inside the apartment or did the gun go off accidentally. He said no, the gun did not go off accidentally. There was a man on the roof and then he began to tell me the story of what happened."

[2] The procedures detailed in *Blaisdell* are now set forth in Mass. R. Crim. P. 14 (b) (2) (B) (i)-(iv), 378 Mass. 874 (1979). Although the defendant

In *Blaisdell, supra* at 768, as well as under Mass. R. Crim. P. 14, 378 Mass. 874 (1979), a written report of the expert's findings is filed with the court. If the judge determines that the report contains material protected by the privilege against self-incrimination, it is sealed until there is a judicial determination that the defendant has waived the privilege. *Id.* The question then becomes: When does a waiver occur and in what circumstances may the Commonwealth introduce evidence which it obtains either directly or indirectly as a result of the court-ordered psychiatric examination?

First, under our holding in *Blaisdell, supra* at 764, a waiver occurs and such evidence may be introduced when a defendant voluntarily takes the stand to testify in his own behalf on the issue of criminal responsibility. Second, a waiver may occur and the Commonwealth's court-appointed psychiatrist may testify as to his opinion based on the defendant's statements to him, "if the defendant offers testimony [through his own expert] based on [the defendant's] statements." *Blaisdell* v. *Commonwealth, supra* at 769. The mere fact that a defendant gives notice of an intention to interpose a defense of insanity or that he testifies in his own behalf cannot be construed as a waiver of his privilege against self-incrimination. *Id.* at 764. The defendant must introduce evidence bearing on the issue of criminal responsibility before the Commonwealth is entitled to introduce evidence obtained as a result of a court-ordered psychiatric examination. By following the procedures outlined by this court in *Blaisdell* v. *Commonwealth, supra,* and rule 14, the Commonwealth will generally be prepared to meet a defendant's evidence on the issue of criminal responsibility.

In this case, the prosecutor conducted her cross-examination of the defendant and introduced evidence obtained as a result of the court-ordered examination after the defendant had testified, but before he introduced any evidence on the issue of

did not raise the traditional defense of lack of criminal responsibility, see *supra* at 804-805, the judge correctly followed the procedures set forth in *Blaisdell* and Mass. R. Crim. P. 14 (b) (2) (B) (i)-(iv), on the issue of mental impairment.

mental impairment. The use of the evidence derived from the court-ordered examination in this manner was improper. However, no possible prejudice could have resulted because the defendant's expert testified to an opinion which was based in part on the defendant's statements to him. See *Blaisdell* v. *Commonwealth, supra* at 766. In these circumstances, there is no reversible error.

2. *Prior criminal acts.* The defendant next argues that the testimony of Sando regarding the defendant's intent to shoot at the man on the roof was not "substantially relevant to the offense charged." "When a prior criminal act is relied upon to prove intent or knowledge, similarity between the two events must be shown to establish the threshold requirement of relevance." *United States* v. *Hernandez-Miranda,* 601 F.2d 1104, 1108 (9th Cir. 1979). We hold that the evidence of the defendant's prior misconduct on the day of the shooting was relevant to establish his intent. See *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 268-269 (1982). Intent is a significant issue in this case because the defendant claims that he shot the victim accidentally.

In this Commonwealth, the prosecution "may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purpose of showing his bad character or propensity to commit the crime charged." *Commonwealth* v. *Trapp,* 396 Mass. 202, 206 (1985). Such evidence may, however, be admitted for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Proposed Mass. Rules of Evid. 404 (b). See *Commonwealth* v. *Baker,* 368 Mass. 58, 85-86 (1975).

After Sando testified regarding the prior shooting incident, the judge instructed the jury that they were permitted to use this evidence "as to any extent you feel it may shed light upon the defendant's intent at the time of the alleged shooting of the young boy in question and for that [purpose] only. It is absolutely not to be considered as any evidence of bad character or propensity to commit crime as far as this defendant is concerned."

The prejudice likely to be generated by the admission of this evidence did not so outweigh its probative value that it was error to admit it. See *Commonwealth* v. *Bradshaw, supra* at 270. In light of the judge's limiting instruction and the relevance of this testimony to establish the defendant's intent and rebut his defense of accident, we hold that the judge did not abuse his discretion.

3. *Post-mortem injuries.* On December 3, 1984, the defendant filed a pretrial motion to preclude the Commonwealth from introducing any evidence that the defendant had inflicted a post-mortem incision to the victim's genital area. The motion was denied without prejudice. At trial, over the defendant's objection, the judge allowed the Commonwealth's pathologist to testify regarding the victim's post-mortem injuries. The doctor testified that "[o]n the abdomen there was a cut, incised wound of the lower abdomen which extended into the scrotum. On the right groin there were three small straight line little scrape like abrasions and on the front of the left lower leg there was a three-eighths inch bruise." The defendant argues that the admission of this evidence denied the defendant a fair trial because its probative value was outweighed by its prejudicial effect. We disagree.

Prior to the introduction of the pathologist's testimony, the judge instructed the jury that they could consider the evidence of post-mortem injuries relative to any light that the evidence may shed on the defendant's intent to kill. He further instructed that "[i]t will not be offered, nor can you consider it as any evidence of deliberate premeditation, which is a necessary element of first degree murder."

In *Commonwealth* v. *Amazeen,* 375 Mass. 73, 81 (1978), we observed that the intent to inflict an injury may be inferred from, among other things, the condition of the body after death. The judge did not err in allowing the jury to consider this evidence.

4. *Dismissal of the kidnapping indictment.* To support the charge of kidnapping, the Commonwealth introduced the testimony of a witness who saw the defendant pull the victim "[t]owards him . . . towards the woods." The defendant argues

that if a kidnapping occurred, it was incidental to the killing and that therefore the two crimes "merged." After the briefs were filed in this case, we issued our decision in *Commonwealth* v. *Rivera, ante* 244 (1986). We affirm our position stated in *Rivera,* and refuse "to adopt a rule that requires the treatment of confinement or asportation used as a means to facilitate the commission of [a crime] as merged in the substantive crime." *Id.* at 254.

5. *G. L. c. 278, § 33E.* We have examined the entire case on the law and the evidence and conclude that there is no reason to order a new trial or to direct the entry of a verdict of a lesser degree of murder.

*Judgments affirmed.*