Lenk, J.
This appeal arises from a petition brought under G. L. c. 211, § 3, challenging a Superior Court judge’s order approving the issuance of a grand jury subpoena duces tecum that compels a law firm to produce a cellular telephone. The single justice reserved and reported the matter to this court, and our analysis is confined to the limited record before us.
The Commonwealth contends that the telephone belonged to John Doe,[1] the target of a grand jury investigation; that it was transferred from Doe to the law firm to obtain legal advice; and that it contains in the information stored on its memory, particularly in its record of text messages, evidence of a crime under investigation by the grand jury. The Superior Court judge determined that, while a subpoena served on Doe would violate his right against self-incrimination, and a subpoena served on the law firm would violate the attorney-client privilege, a subpoena compelling the law firm to produce the telephone could be served upon an ex parte showing by the Commonwealth of probable cause sufficient for the issuance of a search warrant. We conclude that, on the record before us, the attorney-client privilege protects Doe against compelled production of the telephone by the law firm, and that the protection afforded by the attorney-client privilege may not be set aside based on a showing of probable cause. We therefore reverse the Superior Court judge’s order.
1. Background. The law firm began representing Doe in April, 2013. According to the Commonwealth, in June, 2013, Doe transferred the telephone to the law firm in connection with its provision of legal services to him.[2] In March, 2014, the Com *401 monwealth moved under Mass. R. Prof. C. 3.8 (f), 426 Mass. 1397 (1998), for judicial approval of a grand jury subpoena compelling the law firm to produce the telephone.[3] A Superior Court judge held a hearing on the motion and issued a ruling from the bench, followed by a written decision a few days thereafter. The judge denied the motion, but noted that his denial was without prejudice to refiling. The judge indicated that, if he determined upon such refiling that the Commonwealth had, through an ex parte proceeding, established probable cause sufficient to justify a search under the Fourth Amendment to the United States Constitution, he would allow the Commonwealth to issue a subpoena compelling the law firm to produce the telephone. At a subsequent hearing, the judge allowed the Common *402 wealth’s second motion for judicial approval of the grand jury subpoena directed at the law firm, but stayed issuance and execution of the subpoena to allow Doe to file a petition for relief in the county court pursuant to G. L. c. 211, § 3. The judge also ordered that, if the law firm indeed had the device in its possession, it not alter, transfer, dispose of, return, or otherwise render the telephone unavailable pending further court order.
After Doe filed his G. L. c. 211, § 3, petition, the law firm filed a motion to intervene. In response to a request by the single justice, the law firm submitted an affidavit indicating that, if the petition were dismissed, and if the Commonwealth served the subpoena on the law firm, it would refuse to comply, subjecting itself to a finding of contempt. Based on this affidavit, the single justice reserved and reported the matter to this court.[4]
2. Discussion, a. Standard of review. While we review a trial judge’s decisions on discovery matters for an abuse of discretion, our review of mixed questions of fact and law, including questions of the validity of an assertion of the privilege against self-incrimination, is de nova. McCarthy v. Slade Assocs., Inc., 463 Mass 181, 190 (2012) (citation omitted). Our review of a decision involving the attorney-client privilege is likewise de nova. Clair v. Clair, 464 Mass. 205, 214 (2013), quoting Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 302 (2009).
b. The right against self-incrimination, the act of production doctrine, and the attorney-client privilege. We conclude that the subpoena was issued improperly. This conclusion derives from the application of three well-established principles: the privilege against self-incrimination, the act of production doctrine, and the attorney-client privilege.
The Fifth Amendment to the United States Constitution provides, in relevant part, that “[n]o person ... shall be compelled in any criminal case to be a witness against himself.” Article 12 of the Massachusetts Declaration of Rights similarly provides that “[n]o subject shall ... be compelled to accuse, or furnish evidence against himself.”
*403 The United States Supreme Court has “made it clear that the act of producing documents in response to a subpoena may have a compelled testimonial aspect,” because production may constitute an admission “that the papers existed, were in [the witness’s] possession or control, and were authentic.” United States v. Hubbell, 530 U.S. 27, 36 (2000). With respect to art. 12, we similarly have held “that the act of production, quite apart from the content of that which is produced, may itself be communicative.” Commonwealth v. Doe, 405 Mass. 676, 679 (1989). By turning over evidence in response to a subpoena, a defendant may be “making implicitly a statement about its existence, location and control,” and “[t]he implied statement would also function as an authentication.” Commonwealth v. Hughes, 380 Mass. 583, 592, cert, denied, 449 U.S. 900 (1980). See Commonwealth v. Doe, supra (by turning over materials in response to subpoena, witness “would be testifying, in effect, as to the existence and location of those materials, as well as to the control that he had over them,” and implicitly would be “authenticating those materials”).
Indeed, the protection against the implicit self-incrimination involved in compelled production stands on even firmer ground under art. 12 than it does under the Fifth Amendment. Unlike the Fifth Amendment, art. 12 specifically prohibits compelling a defendant to “furnish evidence against himself.” We have long recognized, based on the “difference in the phraseology between the Massachusetts Constitution and the Fifth Amendment,” Opinion of the Justices, 412 Mass. 1201, 1210 (1992), that “the protections of art. 12 extend beyond the safeguards afforded by the United States Constitution.” See Doe, 405 Mass. at 678. The requirement that a subject not be forced to “furnish evidence against himself,” we have observed, “may be presumed to be intended to add something to the significance of’ the preceding protection against compelled self-accusation. Opinion of the Justices, supra. Accordingly, we have more broadly construed the protections afforded by the act of production doctrine under art. 12, in comparison with the Fifth Amendment. See id. at 1210-1211; Commonwealth v. Burgess, 426 Mass. 206, 218 (1997).
In Fisher v. United States, 425 U.S. 391, 402 (1976) (Fisher), the United States Supreme Court held “that compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the [target of an investigation] might have enjoyed from being compelled to produce them himself.” The *404 Court went on to conclude, however, that, apart from the right against self-incrimination, the attorney-client privilege protects certain materials from production by an attorney. If a client “transferred possession of. . . documents . . . from himself to his attorney in order to obtain legal assistance, ... the papers, if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege.” Id. at 405.
“Under the facts and circumstances presented” in this case, the motion judge was “satisfied that had a subpoena been served on [Doe] personally, he would be able to assert a privilege against production of his [telephone based on the Fifth Amendment and/or art. 12.” In its brief, the Commonwealth acknowledges that Doe could not be compelled to produce the telephone had he retained possession of it. Nonetheless, the Commonwealth offers several arguments that would avoid the inevitable implications of that concession under the United States Supreme Court’s decision in Fisher. In essence, these arguments seek to sever the chain that links the determination that Doe could not be compelled to produce the telephone, had he retained possession of it, with the conclusion that the law firm likewise cannot be compelled to produce the telephone, after purportedly receiving the telephone from Doe for the purpose of rendering legal advice.
The Commonwealth contends, for instance, that although Doe’s act of producing the telephone in response to the subpoena would be testimonial and incriminating under the Fifth Amendment and art. 12, the law firm’s act of producing the telephone in response to a subpoena would be “trivial and non-testimonial.” That argument rests on a mistaken understanding of the Fisher rule. The Fisher Court made clear that its analysis hinged not on the law firm’s act of producing the telephone but, rather, on the client’s hypothetical act of producing evidence in response to a subpoena; where materials were transferred to the attorney “for the purpose of obtaining legal advice,” and where “the client himself would be privileged [f]rom production” of the materials had he retained them, “the attorney having possession of the document is not bound to produce.” Fisher, 425 U.S. at 404, quoting 8 J. Wigmore, Evidence § 2307, at 592 (McNaughton rev. ed. 1961).
The focus on whether Doe would be protected against compelled production had he maintained possession of the materials reflects the policy underlying the Fisher rule. “Fisher's rule arose *405 from the policy of promoting open communications between lawyers and their clients.” Application of Sarrio, S.A., 119 F.3d 143, 146 (2d Cir. 1997). “Exposing documents — not otherwise subject to production — to discovery demands after delivery to one’s attorney . . . would produce a curious and unacceptable result.” Ratliff v. Davis Polk & Wardwell, 354 F.3d 165, 169 (2d Cir. 2003). It would mean that “[t]he price of an attorney’s advice would be disclosure of previously protected matters,” thereby “chill[ing] open and frank communications between attorneys and their clients.” Id. As the United States Court of Appeals for the Ninth Circuit has explained, “The attorney-client privilege and the interests it protects would be ill-served by holding that [the client] walked into his attorney’s office unquestionably shielded with the [F]ifth [A]mendment’s protection, and walked out with something less.” In re Grand Jury Proceedings on Feb. 4, 1982, 759 F.2d 1418, 1420 (9th Cir. 1985). Accordingly, under the Fisher analysis, the law firm stands in its client’s shoes; if a client could not be compelled to produce materials because of the right against self-incrimination, and if the client transfers the materials to the attorney for the provision of legal advice, an attorney likewise cannot be compelled to produce them.
The policy underlying the Fisher rule reveals the inadequacy of the Commonwealth’s suggestion that “the firm could appoint an alternate third party designee to logistically present the [tele-] phone to the grand jury.” The Fisher rule serves to protect open communication between attorneys and clients by ensuring that a client does not sacrifice the protection that evidence otherwise would receive against compelled production by transferring it to an attorney. The damage to the attorney-client relationship would result whenever previously unobtainable materials become obtainable as a result of being transferred to the attorney, regardless of whether the materials were handed over by a third-party designee or by the law firm itself.
The Commonwealth cites In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65 (1st Cir. 2011), cert, denied, 133 S. Ct. 43 (2012), in support of its attempt to distinguish between the testimonial character of the law firm’s act of production and the client’s act of production. But that case is inapposite. Unlike Fisher and unlike the instant case, the client in In re Grand Jury Subpoena (Mr. S.) had not transferred any materials to his attorney. Instead, the client had approached the attorney to complete a real estate transaction, prompting the attorney to prepare a set of standard *406 transaction documents. Id. at 73. Because the client there never had possession of the documents sought, the Fisher rule, which protects documents that could not be obtained by a subpoena directed at the client from compelled production once transferred to an attorney, played no role in the case.
Finally, the Commonwealth seeks to distinguish between the telephone as “physical evidence” and the concededly documentary materials that the telephone contains. The Commonwealth insists that it “only sought a grand jury subpoena for production of the physical item of evidence,” and asserts that, once it acquires the telephone, “it will seek a search warrant to authorize a forensic examination of the device.” But if we were to embrace this distinction, the result would empty the Fisher rule and the act of production doctrine of any effect: the Commonwealth could compel the production of any document based on the assertion that the subpoena was directed merely at the document as a “physical item” — an amalgam of paper, binding, and ink — and that it would get a separate search warrant before actually opening the document and reading the pages.
The extrajurisdictional case law that the Commonwealth cites in support of its distinction between the telephone as a “physical item” and the telephone’s contents almost exclusively involves items — typically either the instrumentalities or proceeds of crime — whose evidentiary value to the prosecution had nothing to do with their communicative contents. See In re Ryder, 381 F.2d 713, 714 (4th Cir. 1967) (stolen money and sawed-off shotgun); Hitch v. Pima County Superior Court, 146 Ariz. 588, 590 (1985) (wristwatch allegedly stolen from victim); People v. Lee, 3 Cal. App. 3d 514, 521, 524-525 (1970) (bloody shoes); Anderson v. State, 297 So. 2d 871, 871 (Fla. Dist. Ct. App. 1974) (stolen dictaphone and calculator that defendant was alleged to have received before turning over to attorney); Rubin v. State, 325 Md. 552, 565 (1992) (gun and bullets allegedly used in murder); People v. Nash, 418 Mich. 196, 216 (1983) (wallet allegedly taken from victim and revolver, ammunition, and holster allegedly used in killing); Commonwealth v. Stenhach, 356 Pa. Super. 5, 10 (1986) (broken stock of rifle allegedly used in killing); State ex rel. Sowers v. Olwell, 64 Wash. 2d 828, 829 (1964) (knives allegedly used in crime). But see State v. Bright, 676 So. 2d 189, 193-194 (La. Ct. App. 1996) (diary).
By contrast, the Commonwealth concedes that many of the materials contained on a cellular telephone are documentary. As *407 the United States Supreme Court has observed, “The term ‘cell phone’ is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone,” and “could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.” Riley v. California, 134 S. Ct. 2473, 2489 (2014). Furthermore, though the Commonwealth asserts that it will acquire a separate warrant before searching the contents of the telephone, the evidentiary value of the telephone for the prosecution clearly inheres in its documentary contents, rather than in the telephone as a “physical item.” Indeed, in its initial motion for judicial approval of the grand jury subpoena, the Commonwealth indicated that the “cell phone, specifically the information contained therein and accessible through a forensic examination of the phone, constitutes evidence that is essential to the successful completion of the . . . ongoing grand jury investigation.”
Additionally, the Commonwealth notes that Mass. R. Prof. C. 3.4 (a), 426 Mass. 1389 (1998), which prohibits a lawyer from “unlawfully obstructing] another party’s access to evidence or unlawfully altering], destroying], or conceal [ing] a document or other material having potential evidentiary value,” requires that the firm produce the telephone. Because the firm is now “aware of the [telephone’s] import and that it has evidentiary value,” the Commonwealth contends, the firm “cannot circumvent its ethical obligations” by invoking the attorney-client privilege. But that argument begs the question. Rule 3.4 (a) of the Massachusetts Rules of Professional Conduct prohibits a lawyer from obstructing a party’s access to evidence only where that obstruction is “unlawful.” The law firm asserts that its refusal to produce the telephone is not “unlawful” but is instead required by the attorney-client privilege.
Because the Commonwealth does not contest that Doe’s privilege against self-incrimination would prohibit the Commonwealth from compelling Doe to produce the telephone had he retained it, and because under Fisher the law firm cannot be compelled to produce materials transferred to the law firm by a client for the provision of legal advice if the client could not have been compelled to produce them, we conclude on the record before us that the attorney-client privilege protects against compelled production of the telephone.
c. Superior Court judge’s decision. Although the judge approved the issuance of the subpoena, he did so on the basis of a *408 logic that differs from the arguments advanced by the Commonwealth on appeal. Unlike the Commonwealth, the judge correctly interpreted Fisher to mean that the law firm “could refuse to comply with [the subpoena] based on the attorney-client privilege if, had the subpoena been served directly on [Doe], he would be able to assert a Fifth Amendment protection (or parallel protections under art. 12 of the Massachusetts Declaration of Rights).” The judge nevertheless determined that the law firm could be compelled to produce the telephone.
The judge observed that, had Doe not transferred the telephone to his attorney, nothing would prevent the police from finding and seizing the telephone under a properly issued search warrant. The judge noted, however, that, because Doe had transferred the telephone to his lawyers, there was a “fly in the ointment” of the search warrant approach. General Laws c. 276, § 1, a general provision governing the issuance of search warrants, includes in its final paragraph a restriction on the issuance of search warrants for evidence in the possession of lawyers, psychotherapists, and clergymen. It provides, in part, that “no search warrant shall issue for any documentary evidence in the possession of a lawyer . . . unless ... a justice is satisfied that there is probable cause to believe that the documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue,” or unless “there is probable cause to believe that the lawyer ... in possession of such documentary evidence has committed, is committing, or is about to commit a crime.”
The judge thus confronted a situation in which the Fisher rule and G. L. c. 276, § 1, appeared, in combination, to place the telephone beyond the reach of law enforcement. Concluding that G. L. c. 276, § 1, “cannot... be used as a shield to protect clearly inculpatory evidence . . . from the reach of the law,” the judge determined that a subpoena could issue compelling the law firm to turn over the telephone, but only upon a showing of the probable cause that ordinarily would be sufficient, were it not for G. L. c. 276, § 1, to acquire a warrant to search the law firm’s offices and seize the telephone. In essence, the judge crafted a new rule through an aggregation of the procedures that would be permitted were it not for the Fisher rule and G. L. c. 276, § 1. In the absence of the Fisher rule, the law firm could be compelled to produce the telephone under subpoena upon the prosecution’s satisfying the requirements of Mass. R. Prof. C. 3.8 (f). In the absence of G. L. c. 276, § 1, the police could acquire a warrant to *409 search the law firm’s offices if the prosecution established probable cause to believe that the telephone was located in the law firm’s offices and contained evidence of a crime. Consequently, the judge concluded that the law firm could be compelled to produce the telephone under subpoena, but only if the Commonwealth could establish probable cause to believe that the telephone was located in the law firm’s offices and contained evidence of a crime.
This approach, however, contradicts both case law and the relevant statute. The judge’s approach is built on conflating search warrants and subpoenas. Yet the act of production doctrine’s underlying premise is that being compelled to produce evidence in response to a subpoena may involve a forced incriminating statement that would not occur if law enforcement simply found the evidence while executing a search. See, e.g., Commonwealth v. Hughes, 380 Mass. at 593.
Because the act of production doctrine derives from the privilege against self-incrimination, moreover, it may not be set aside based on a showing of probable cause. We have emphasized the distinction between the protection against unreasonable searches afforded by the Fourth Amendment and the more absolute protection afforded by the privilege against self-incrimination. “[Ujnlike the more limited protections of the Fourth Amendment prohibition against searches and seizures that are ‘unreasonable,’ ” Blaisdell v. Commonwealth, 372 Mass. 753, 761 (1977), the privilege against self-incrimination admits “no balancing of State-defendant interests” and does not “yield[ ] to ‘reasonable’ intrusions.” Id. Law enforcement, for instance, plainly could not compel a defendant to disclose where he allegedly hid a murder weapon, even if the police could establish probable cause to believe that the weapon was hidden somewhere in his house and that, if given a warrant, they would likely be able to find the weapon eventually anyway. To the contrary, “where the privilege [against self-incrimination] applies, it may be overcome only by either (1) a constitutionally adequate grant of immunity;... or (2) a valid waiver of the privilege by the person who possesses it.” Id. (citation omitted).
Under Fisher, the protection that a client enjoys under the attorney-client privilege is coterminous with the protection that a client would have enjoyed under the privilege against self-incrimination. Consequently, just as the right against self-incrimination may not be set aside based on judicial speculation about *410 what the prosecution might be able to find with a valid search warrant, neither may the Fisher rule. In short, neither the privilege against self-incrimination nor the attorney-client privilege may be extinguished on the basis of a “would’ve, could’ve” analysis that invites courts to hypothesize what police might be able to find and seize, if given enough time and a valid search warrant.
The judge based his decision on a provision in G. L. c. 276, § 1, that states, “Nothing in this section shall be construed to abrogate, impair, or limit powers of search and seizure granted under other provisions of the General Laws or under the common law.” Again, however, this conclusion rests on conflating subpoenas with search warrants, and the prosecution’s ability to compel production of evidence with the prosecution’s power merely to look for it. The Commonwealth did not seek to obtain the telephone through its “powers of search and seizure.” Instead, it has sought to obtain the telephone via a subpoena. And the basis upon which we have decided that the Commonwealth cannot obtain the telephone via subpoena has nothing to do with G. L. c. 276, § 1, or any other limitation on the Commonwealth’s “powers of search and seizure.” Instead, our holding is based on our determination that the compelled production of the telephone via a subpoena directed at Doe would violate the act of production doctrine, and consequently that the compelled production of the telephone via a subpoena directed at the law firm would violate the attorney-client privilege under Fisher. Because the Commonwealth here sought, and the judge allowed, a subpoena compelling production of the telephone, the provision of G. L. c. 276, § 1, relating to “powers of search and seizure” has no bearing on the analysis.
d. Availability of a search warrant under G. L. c. 276, § 1. Although the Commonwealth has consistently sought to acquire the telephone via a subpoena, it does indicate that, if we decline to authorize the issuance of a subpoena compelling the law firm to produce the telephone, it “will seek a search warrant to seize the evidence from the law firm.” Even if the Commonwealth were to pursue that approach, however, it would not gain any support from the provision of G. L. c. 276, § 1, preserving “powers of search and seizure.” That provision precedes, rather than follows, the paragraph prohibiting searches of documentary evidence in *411 the possession of lawyers.[5] See G. L. c. 276, § 1. The latter paragraph opens, “Notwithstanding the foregoing provisions of this section,” mating it clear that it in fact does limit the powers of search and seizure. See id. Indeed, because the paragraph prohibits the issuance of search warrants for documentary evidence except under certain narrowly drawn circumstances, it plainly does “abrogate, impair, or limit powers of search and seizure granted under other provisions of the General Laws or under the common law.” Id.
The Commonwealth offers two reasons why a search for the telephone would not violate the restrictions that G. L. c. 276, § 1, imposes on searches of law offices. First, the Commonwealth asserts that the search and seizure it contemplates is not for any “documentary evidence,” and thus falls outside the scope of the statute. Second, the Commonwealth contends that, even if the statute did apply to the contemplated search for the telephone, the search falls within the statute’s exceptions for situations where “documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue.” G. L. c. 276, § 1. We address each in turn.
*412 i. The Commonwealth’s first argument is easily dismissed. General Laws c. 276, § 1, contains a broad definition of “documentary evidence.” It provides that, “[f]or purposes of this paragraph, ‘documentary evidence’ includes, but is not limited to, writings, documents, blueprints, drawings, photographs, computer printouts, microfilms, X-rays, files, diagrams, ledgers, books, tapes, audio and video recordings, films or papers of any type or description.” Id. The Commonwealth concedes that “the modern cell phone may contain any and all of the above listed categories of evidence.”
The Commonwealth’s contention that a search for the cellular telephone would not constitute a search for “documentary evidence” relies upon the same misplaced distinction between the telephone as a “physical item” and the telephone’s undeniably documentary contents that the Commonwealth advances in arguing that the Fisher rule does not apply, and the distinction fails here for similar reasons. For instance, while “files” are specifically identified as “documentary evidence” in the statute, the statute itself does not refer to file cabinets. If we were to accept the Commonwealth’s distinction between the telephone as a “physical item” and the documentary materials that the telephone contains, then the Commonwealth also could acquire a warrant to search an attorney’s office and seize a file cabinet, including the files it contains, as a “physical item.” The Commonwealth conceded in its motion for issuance of a subpoena that the evidentiary value of the telephone for purposes of the investigation derives from the “documentary” materials contained on the telephone, rather than from any aspect of the telephone as a “physical item.” Under these circumstances, it is clear that a search for the telephone is a search for “documentary evidence” within the meaning of G. L. c. 276, § 1.
ii. The Commonwealth next asserts that a search warrant may issue in this case because “there is probable cause to believe that the documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue.” For several reasons, we are unconvinced by the Commonwealth’s argument that, “in the event that the Commonwealth cannot otherwise obtain the item, the evidence will effectively be ‘secreted’ and ‘lost.’ ”
The interpretation offered by the Commonwealth diverges from any accepted definition of “secreted” or “lost.” An item is “secreted” when it is “hid[den],” “conceal[ed],” or “removefd] from observation or the knowledge of others”; an item is “lost” when *413 it is “not be found; missing” or “no longer held or possessed; parted with.” Webster’s New Universal Unabridged Dictionary 1640, 1069 (2d ed. 1983). The Commonwealth’s argument would require that we add to these familiar definitions a new, distinctly unfamiliar definition: “unobtainable by law enforcement because of the combined effect of a legal privilege and a statute.”
The interpretation offered by the Commonwealth, moreover, ignores the statute’s requirement for a factual showing. To obtain a search warrant for a lawyer’s office, the prosecutor must make a showing of “probable cause to believe that the documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue,” or that “there is probable cause to believe that the lawyer ... in possession of such documentary evidence has committed, is committing, or is about to commit a crime.” G. L. c. 276, § 1. Under the interpretation urged by the Commonwealth, this requirement of a factual showing of probable cause disappears. Instead, whether an item is “secreted” or “lost” becomes a purely legal issue, on which the Commonwealth can prevail simply by showing that the lawyer holding the evidence has invoked a privilege against compelled production.
The Commonwealth’s overarching contention is that the exception applies to any situation where the application of G. L. c. 276, § 1, renders documentary materials whose contents are not themselves privileged unobtainable by law enforcement. Nothing in the language of the exception supports this view, and it gains no support from the legislative history of the act that amended G. L. c. 276, § 1, to add the provision at issue here.
The legislative history indicates that the provision was inserted for two main reasons. First, the provision sought to ensure that “the holder [of material sought by law enforcement] has the opportunity to argue that the material is privileged” before the material is seized, an opportunity unavailable with search warrants because they are “granted ex parte with no notice to the holder of the material.” Memorandum from Patricia A. Boies, Deputy Chief Counsel, Office of Legal Counsel, to then Governor Michael S. Dukakis (Dec. 18, 1986). Just so, here, confronted by a subpoena seeking the telephone, the law firm responded by asserting the attorney-client privilege, as articulated in Fisher. Fisher had been the law for more than a decade when the provision was enacted. Because we presume that the Legislature acts against the backdrop of already-existing law, see Alliance to Protect Nantucket Sound, Inc. v. Energy Facilities Siting Bd., 457 *414 Mass. 663, 673 (2010), it is reasonable to think that Fisher would supply one possible basis for a claim of privilege.
Second, the legislative history indicates that the provision sought to counteract the disruptive effect that police searches could have on “the private, confidential relationships between the professionals covered and their clients, patients, or penitents.” Boies memorandum, supra. In particular, the provision was “designed to protect against the situation in which police executing a search warrant may look through many documents, both privileged and unprivileged, relating to clients who are not even the subject of the documents sought, and then must make on-the-spot decisions as to what should or should not be seized.” 1986 House Doc. 6574 (Letter from then Governor Michael S. Dukakis to the Senate and House of Representatives [Dec. 24, 1986]). The risk that law enforcement will inadvertently see or seize private, confidential documents related to uninvolved third-parties exists whenever law enforcement executes a search, regardless of whether the documents that law enforcement is looking for are privileged.
Accordingly, we reject the Commonwealth’s contention that documentary evidence is “secreted” whenever an attorney invokes the Fisher rule to resist its compelled production. Instead, we conclude that the exception applies, as it says, only where “there is probable cause to believe that the documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue.” As indicated, this is a fact-specific determination. Were the Commonwealth to seek a search warrant on the same record that was before the Superior Court judge in March, 2014, when the Commonwealth moved for judicial approval for a subpoena, it would not satisfy the “secreted” exception. At that time, the Commonwealth agreed that the telephone had been given to the law firm for purposes of acquiring legal advice. Nothing in the record suggests that in March, 2014, the law firm was no longer engaged in providing the requested advice. The privileged retention of client documents in such circumstances cannot be said to be the secretion of those documents. Hence, in this case, on this record, there is no evidence suggesting secretion of the documents. We leave for another day the question whether and under what circumstances the prolonged retention by counsel of client documents unprotected or no longer protected by any privilege might qualify as secreting under the meaning of G. L. c. 276, § 1.
*415 Notwithstanding the foregoing, we are mindful of the concern that, if evidence possibly obtainable via a search when it was in the client’s hands were to become immune from both search and subpoena when placed in an attorney’s hands, the result will be, as the Superior Court judge noted, “a race ... to the lawyer’s office.” We make several observations.
First, G. L. c. 276, § 1, only operates to bar the search of an attorney’s offices in a narrow set of circumstances. The statute is limited to searching for documentary evidence and would not typically encompass situations where a client seeks to hide the instrumentalities or proceeds of a crime at an attorney’s office. While the telephone at issue here constitutes “documentary evidence” under the statute, the statute also provides explicit exceptions for circumstances where the evidence “will be destroyed, secreted or lost in the event a search warrant does not issue,” or for circumstances where the holder of the evidence “has committed, is committing, or is about to commit a crime.”
Second, it is the act of producing the telephone by the law firm, rather than the telephone itself, that is covered by the attorney-client privilege. The client’s right against compelled production by his or her attorney is not absolute. To fall under the Fisher rule, materials whose contents are not themselves privileged must have been transferred to counsel “for the purpose of obtaining legal advice.” Fisher, 425 U.S. at 404. Accordingly, when a client transfers materials to an attorney for purposes of shielding them from law enforcement’s reach, the Fisher rule offers no protection.[6]
Third, nothing we have said suggests that a lawyer, having received materials whose contents are not themselves privileged for purposes of rendering legal advice, may retain such materials indefinitely, absent a continuing bona fide need and purpose related to the provision of legal advice. Any assessment of whether and, if so, when client materials would cease to be protected by the Fisher rule is, of course, a complex matter, involving factual determinations that will depend on the specific circumstances presented. Because the Commonwealth has never *416 argued that either Doe’s initial transfer of the telephone or the law firm’s continued retention of it are not justifiable “for the purpose of obtaining legal advice” under Fisher, and the parties have not provided briefing on the issue, we do not address the availability of a subpoena compelling the production of evidence in other circumstances.[7]
3. Conclusion. Confining ourselves to the record that was before the Superior Court judge in March, 2014, we conclude that Doe’s attorney-client privilege protects against compelled production of the telephone by the law firm. We remand the matter to the single justice for entry of a judgment allowing Doe’s petition for relief under G. L. c. 211, § 3, ordering the Superior Court to reverse the order approving the issuance of a grand jury subpoena duces tecum, and for such other proceedings as are consistent with this opinion.

So ordered.

A pseudonym.

The Commonwealth asserts that the judge made a specific factual finding that the cellular telephone exists and is in the possession of the law firm. We discern no such finding in the judge’s decision. In the “Facts” portion of his decision, the judge indicated specifically that “[t]he Commonwealth asserts that on or about June 16, 2013, [Doe] delivered his cell phone to [his] attorneys in connection with their provision of legal services to him.” The factual findings that the Commonwealth identifies involve either the judge’s summary of un *401 contested issues concerning the supposed telephone (e.g., that, if it was transferred at all, it was transferred to obtain legal advice), or his reprise of the representations of the parties.
The Commonwealth further contends that, in opposing the Commonwealth’s subpoena for the telephone, the firm has implicitly conceded that it has possession of the device. In other words, the Commonwealth would place the law firm in a “Catch-22”: to assert that the attorney-client privilege protects against compelled production of the telephone, the firm must implicitly disclose the client’s privileged communication that the telephone belongs to him, or at least that it was previously in his possession. We reject this suggestion.

Rule 3.8 (f) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1397 (1998), provides that a prosecutor shall:
“not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless:
“(1) the prosecutor reasonably believes:
“(i) the information sought is not protected from disclosure by any applicable privilege;
“(ii) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and
“(iii) there is no other feasible alternative to obtain the information; and
“(2) the prosecutor obtains prior judicial approval after an opportunity for adversarial proceeding . . . .”
Doe contends that the process by which the judge determined that the requirements of Mass. R. Prof. C. 3.8 (f) were met, and that the Commonwealth had established probable cause that the telephone contained evidence of a crime and was in the possession of the law firm, violated Mass. R. Prof. C. 3.8 (f) and standards of constitutional due process. Because we conclude that the attorney-client privilege precluded the issuance of a subpoena given the facts of this case, we need not reach this argument.

Notwithstanding the Commonwealth’s contention that extraordinary relief would not be available under G. L. c. 211, § 3, until the law firm disobeys the subpoena, subjecting itself to a contempt order, “[wjhere,” as here, “the single justice has, in [her] discretion, reserved and reported the case to the full court, we grant full appellate review of the issues reported.” Martin v. Commonwealth, 451 Mass. 113, 119 (2008).

The provisions relevant to our discussion appear at the end of G. L. c. 276, § 1, and provide in full:
“Nothing in this section shall be construed to abrogate, impair or limit powers of search and seizure granted under other provisions of the General Laws or under the common law.
“Notwithstanding the foregoing provisions of this section, no search and seizure without a warrant shall be conducted, and no search warrant shall issue for any documentary evidence in the possession of a lawyer, psychotherapist, or a clergyman, including an accredited Christian Science practitioner, who is known or may reasonably be assumed to have a relationship with any other person which relationship is the subject of a testimonial privilege, unless, in addition to the other requirements of this section, a justice is satisfied that there is probable cause to believe that the documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue. Nothing in this paragraph shall impair or affect the ability, pursuant to otherwise applicable law, to search or seize without a warrant or to issue a warrant for the search or seizure of any documentary evidence where there is probable cause to believe that the lawyer, psychotherapist, or clergyman in possession of such documentary evidence has committed, is committing, or is about to commit a crime. For purposes of this paragraph, ‘documentary evidence’ includes, but is not limited to, writings, documents, blueprints, drawings, photographs, computer printouts, microfilms, X-rays, files, diagrams, ledgers, books, tapes, audio and video recordings, films or papers of any type or description.”

The act of production doctrine is itself not absolute and admits of the “foregone conclusion” exception. See Commonwealth v. Gelfgatt, 468 Mass. 512, 522 (2014) (Commonwealth may compel a testimonial and incriminating act of production if it can establish that “the information that would be disclosed by [a] defendant is a ‘foregone conclusion’ ”). The Commonwealth does not argue that the exception has any application to the facts of record here.

We note that the concurrence proposes a protocol in circumstances that are not before us, and we take no view as to its propriety.