NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11697

IN THE MATTER OF A GRAND JURY INVESTIGATION.


        Suffolk.      September 4, 2014. - January 12, 2015.

     Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
                         & Hines, JJ.


Grand Jury.  Subpoena.  Cellular Telephone.  Constitutional Law,
     Grand jury, Subpoena, Self-incrimination.  Practice,
     Criminal, Grand jury proceedings, Subpoena duces tecum,
     Warrant.  Evidence, Grand jury proceedings.  Attorney at
     Law, Attorney-client relationship.  Search and Seizure,
     Warrant, Probable cause.  Probable Cause.



        Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on April 7, 2014.

        The case was reserved and reported by Botsford, J.


        Aaron M. Katz (Patrick Welsh with him) for the petitioner.
        James L. Sultan (Charles W. Rankin with him) for the amicus
curiae.
        Teresa K. Anderson, Assistant District Attorney (Patrick M.
Haggan, Assistant District Attorney, with her) for the
Commonwealth.


        LENK, J.  This appeal arises from a petition brought under

G. L. c. 211, § 3, challenging a Superior Court judge's order

approving the issuance of a grand jury subpoena duces tecum that

compels a law firm to produce a cellular telephone.  The single justice reserved and reported the matter to this court, and our analysis is confined to the limited record before us.

The Commonwealth contends that the telephone belonged to John Doe,[1] the target of a grand jury investigation; that it was transferred from Doe to the law firm to obtain legal advice; and that it contains in the information stored on its memory, particularly in its record of text messages, evidence of a crime under investigation by the grand jury.  The Superior Court judge determined that, while a subpoena served on Doe would violate his right against self-incrimination, and a subpoena served on the law firm would violate the attorney-client privilege, a subpoena compelling the law firm to produce the telephone could be served upon an ex parte showing by the Commonwealth of probable cause sufficient for the issuance of a search warrant. We conclude that, on the record before us, the attorney-client privilege protects Doe against compelled production of the telephone by the law firm, and that the protection afforded by the attorney-client privilege may not be set aside based on a showing of probable cause.  We therefore reverse the Superior Court judge's order.

---

[1] A pseudonym.

1.  Background.  The law firm began representing Doe in April, 2013.  According to the Commonwealth, in June, 2013, Doe transferred the telephone to the law firm in connection with its provision of legal services to him.[2]  In March, 2014, the Commonwealth moved under Mass. R. Prof. C. 3.8 (f), 426 Mass. 1397 (1998), for judicial approval of a grand jury subpoena compelling the law firm to produce the telephone.[3]  A Superior

_____

[2] The Commonwealth asserts that the judge made a specific factual finding that the cellular telephone exists and is in the possession of the law firm.  We discern no such finding in the judge's decision.  In the "Facts" portion of his decision, the judge indicated specifically that "[t]he Commonwealth asserts that on or about June 16, 2013, [Doe] delivered his cell phone to [his] attorneys in connection with their provision of legal services to him."  The factual findings that the Commonwealth identifies involve either the judge's summary of uncontested issues concerning the supposed telephone (e.g., that, if it was transferred at all, it was transferred to obtain legal advice), or his reprise of the representations of the parties.

The Commonwealth further contends that, in opposing the Commonwealth's subpoena for the telephone, the firm has implicitly conceded that it has possession of the device.  In other words, the Commonwealth would place the law firm in a "Catch-22":  to assert that the attorney-client privilege protects against compelled production of the telephone, the firm must implicitly disclose the client's privileged communication that the telephone belongs to him, or at least that it was previously in his possession.  We reject this suggestion.

[3] Rule 3.8 (f) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1397 (1998), provides that a prosecutor shall:

    "not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless:

Court judge held a hearing on the motion and issued a ruling from the bench, followed by a written decision a few days thereafter. The judge denied the motion, but noted that his denial was without prejudice to refiling. The judge indicated that, if he determined upon such refiling that the Commonwealth had, through an ex parte proceeding, established probable cause sufficient to justify a search under the Fourth Amendment to the United States Constitution, he would allow the Commonwealth to issue a subpoena compelling the law firm to produce the telephone. At a subsequent hearing, the judge allowed the Commonwealth's second motion for judicial approval of the grand jury subpoena directed at the law firm, but stayed issuance and

---

"(1) the prosecutor reasonably believes:
"(i) the information sought is not protected from disclosure by any applicable privilege;
"(ii) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and
"(iii) there is no other feasible alternative to obtain the information; and
"(2) the prosecutor obtains prior judicial approval after an opportunity for adversarial proceeding . . . ."

Doe contends that the process by which the judge determined that the requirements of Mass. R. Prof. C. 3.8 (f) were met, and that the Commonwealth had established probable cause that the telephone contained evidence of a crime and was in the possession of the law firm, violated Mass. R. Prof. C. 3.8 (f) and standards of constitutional due process. Because we conclude that the attorney-client privilege precluded the issuance of a subpoena given the facts of this case, we need not reach this argument.

execution of the subpoena to allow Doe to file a petition for relief in the county court pursuant to G. L. c. 211, § 3. The judge also ordered that, if the law firm indeed had the device in its possession, it not alter, transfer, dispose of, return, or otherwise render the telephone unavailable pending further court order.

After Doe filed his G. L. c. 211, § 3, petition, the law firm filed a motion to intervene. In response to a request by the single justice, the law firm submitted an affidavit indicating that, if the petition were dismissed, and if the Commonwealth served the subpoena on the law firm, it would refuse to comply, subjecting itself to a finding of contempt. Based on this affidavit, the single justice reserved and reported the matter to this court.[4]

2. _Discussion_. a. _Standard of review_. While we review a trial judge's decisions on discovery matters for an abuse of discretion, our review of mixed questions of fact and law, including questions of the validity of an assertion of the privilege against self-incrimination, is de novo. _McCarthy_ v.

---

[4] Notwithstanding the Commonwealth's contention that extraordinary relief would not be available under G. L. c. 211, § 3, until the law firm disobeys the subpoena, subjecting itself to a contempt order, "[w]here," as here, "the single justice has, in [her] discretion, reserved and reported the case to the full court, we grant full appellate review of the issues reported." _Martin_ v. _Commonwealth_, 451 Mass. 113, 119 (2008).

Slade Assocs., Inc., 463 Mass 181, 190 (2012) (citation omitted). Our review of a decision involving the attorney-client privilege is likewise de novo. Clair v. Clair, 464 Mass. 205, 214 (2013), quoting Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 302 (2009).

b. The right against self-incrimination, the act of production doctrine, and the attorney-client privilege. We conclude that the subpoena was issued improperly. This conclusion derives from the application of three well-established principles: the privilege against self-incrimination, the act of production doctrine, and the attorney-client privilege.

The Fifth Amendment to the United States Constitution provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Article 12 of the Massachusetts Declaration of Rights similarly provides that "[n]o subject shall . . . be compelled to accuse, or furnish evidence against himself."

The United States Supreme Court has "made it clear that the act of producing documents in response to a subpoena may have a compelled testimonial aspect," because production may constitute an admission "that the papers existed, were in [the witness's] possession or control, and were authentic." United States v. Hubbell, 530 U.S. 27, 36 (2000). With respect to art. 12, we

similarly have held "that the act of production, quite apart from the content of that which is produced, may itself be communicative."  Commonwealth v. Doe, 405 Mass. 676, 679 (1989).  By turning over evidence in response to a subpoena, a defendant may be "making implicitly a statement about its existence, location and control," and "[t]he implied statement would also function as an authentication."  Commonwealth v. Hughes, 380 Mass. 583, 592, cert. denied, 449 U.S. 900 (1980).  See Commonwealth v. Doe, supra (by turning over materials in response to subpoena, witness "would be testifying, in effect, as to the existence and location of those materials, as well as to the control that he had over them," and implicitly would be "authenticating those materials").

Indeed, the protection against the implicit self-incrimination involved in compelled production stands on even firmer ground under art. 12 than it does under the Fifth Amendment.  Unlike the Fifth Amendment, art. 12 specifically prohibits compelling a defendant to "furnish evidence against himself."  We have long recognized, based on the "difference in the phraseology between the Massachusetts Constitution and the Fifth Amendment," Opinion of the Justices, 412 Mass. 1201, 1210 (1992), that "the protections of art. 12 extend beyond the safeguards afforded by the United States Constitution."  See Doe, 405 Mass. at 678.  The requirement that a subject not be

forced to "furnish evidence against himself," we have observed, "may be presumed to be intended to add something to the significance of" the preceding protection against compelled self-accusation. Opinion of the Justices, supra. Accordingly, we have more broadly construed the protections afforded by the act of production doctrine under art. 12, in comparison with the Fifth Amendment. See id. at 1210-1211; Commonwealth v. Burgess, 426 Mass. 206, 218 (1997).

In Fisher v. United States, 425 U.S. 391, 402 (1976) (Fisher), the United States Supreme Court held "that compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the [target of an investigation] might have enjoyed from being compelled to produce them himself." The Court went on to conclude, however, that, apart from the right against self-incrimination, the attorney-client privilege protects certain materials from production by an attorney. If a client "transferred possession of . . . documents . . . from himself to his attorney in order to obtain legal assistance, . . . the papers, if unobtainable by summons from the client, are unobtainable by summons directed to the attorney by reason of the attorney-client privilege." Id. at 405.

"Under the facts and circumstances presented" in this case, the motion judge was "satisfied that had a subpoena been served

on [Doe] personally, he would be able to assert a privilege against production of his [tele]phone based on the Fifth Amendment and/or art. 12."  In its brief, the Commonwealth acknowledges that Doe could not be compelled to produce the telephone had he retained possession of it.   Nonetheless, the Commonwealth offers several arguments that would avoid the inevitable implications of that concession under the United States Supreme Court's decision in Fisher.  In essence, these arguments seek to sever the chain that links the determination that Doe could not be compelled to produce the telephone, had he retained possession of it, with the conclusion that the law firm likewise cannot be compelled to produce the telephone, after purportedly receiving the telephone from Doe for the purpose of rendering legal advice.

The Commonwealth contends, for instance, that although Doe's act of producing the telephone in response to the subpoena would be testimonial and incriminating under the Fifth Amendment and art. 12, the law firm's act of producing the telephone in response to a subpoena would be "trivial and non-testimonial." That argument rests on a mistaken understanding of the Fisher rule.  The Fisher Court made clear that its analysis hinged not on the law firm's act of producing the telephone, but rather on the client's hypothetical act of producing evidence in response to a subpoena; where materials were transferred to the attorney

"for the purpose of obtaining legal advice," and where "the client himself would be privileged [f]rom production" of the materials had he retained them, "the attorney having possession of the document is not bound to produce." Fisher, 425 U.S. at 404, quoting 8 J. Wigmore, Evidence § 2307, at 592 (McNaughton rev. 1961).

The focus on whether Doe would be protected against compelled production had he maintained possession of the materials reflects the policy underlying the Fisher rule. "Fisher's rule arose from the policy of promoting open communications between lawyers and their clients." Application of Sarrio, S.A., 119 F.3d 143, 146 (2d Cir. 1997). "Exposing documents -- not otherwise subject to production -- to discovery demands after delivery to one's attorney . . . would produce a curious and unacceptable result." Ratliff v. Davis Polk & Wardwell, 354 F.3d 165, 169 (2d Cir. 2003). It would mean that "[t]he price of an attorney's advice would be disclosure of previously protected matters," thereby "chill[ing] open and frank communications between attorneys and their clients." Id. As the United States Court of Appeals for the Ninth Circuit has explained, "The attorney-client privilege and the interests it protects would be ill-served by holding that [the client] walked into his attorney's office unquestionably shielded with the [F]ifth [A]mendment's protection, and walked out with something

less."  In re Grand Jury Proceedings on Feb. 4, 1982, 759 F.2d 1418, 1420 (9th Cir. 1985).  Accordingly, under the Fisher analysis, the law firm stands in its client's shoes; if a client could not be compelled to produce materials because of the right against self-incrimination, and if the client transfers the materials to the attorney for the provision of legal advice, an attorney likewise cannot be compelled to produce them.

The policy underlying the Fisher rule reveals the inadequacy of the Commonwealth's suggestion that "the firm could appoint an alternate third party designee to logistically present the [tele]phone to the grand jury."  The Fisher rule serves to protect open communication between attorneys and clients by ensuring that a client does not sacrifice the protection that evidence otherwise would receive against compelled production by transferring it to an attorney.  The damage to the attorney-client relationship would result whenever previously unobtainable materials become obtainable as a result of being transferred to the attorney, regardless of whether the materials were handed over by a third-party designee or by the law firm itself.

The Commonwealth cites In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65 (1st Cir. 2011), cert. denied, 133 S. Ct. 43 (2012), in support of its attempt to distinguish between the testimonial character of the law firm's act of production and the client's

act of production.  But that case is inapposite.  Unlike Fisher

and unlike the instant case, the client in In re Grand Jury

Subpoena (Mr. S.) had not transferred any materials to his

attorney.  Instead, the client had approached the attorney to

complete a real estate transaction, prompting the attorney to

prepare a set of standard transaction documents.  Id. at 73.

Because the client there never had possession of the documents

sought, the Fisher rule, which protects documents that could not

be obtained by a subpoena directed at the client from compelled

production once transferred to an attorney, played no role in

the case.

Finally, the Commonwealth seeks to distinguish between the

telephone as "physical evidence" and the concededly documentary

materials that the telephone contains.  The Commonwealth insists

that it "only sought a grand jury subpoena for production of the

physical item of evidence," and asserts that, once it acquires

the telephone, "it will seek a search warrant to authorize a

forensic examination of the device."  But if we were to embrace

this distinction, the result would empty the Fisher rule and the

act of production doctrine of any effect:  the Commonwealth

could compel the production of any document based on the

assertion that the subpoena was directed merely at the document

as a "physical item" -- an amalgam of paper, binding, and ink --

and that it would get a separate search warrant before actually opening the document and reading the pages.

The extrajurisdictional case law that the Commonwealth cites in support of its distinction between the telephone as a "physical item" and the telephone's contents almost exclusively involves items -- typically either the instrumentalities or proceeds of crime -- whose evidentiary value to the prosecution had nothing to do with their communicative contents.  See In re Ryder, 381 F.2d 713, 714 (4th Cir. 1967) (stolen money and sawed-off shotgun); Hitch v. Pima County Superior Court, 146 Ariz. 588, 590 (1985) (wrist watch allegedly stolen from victim); People v. Lee, 3 Cal. App. 3d 514, 521, 524-525 (1970) (bloody shoes); Anderson v. State, 297 So. 2d 871, 871 (Fla. Dist. Ct. App. 1974) (stolen dictaphone and calculator that defendant was alleged to have received before turning over to attorney); Rubin v. State, 325 Md. 552, 565 (1992) (gun and bullets allegedly used in murder); People v. Nash, 418 Mich. 196, 216 (1983) (wallet allegedly taken from victim and revolver, ammunition, and holster allegedly used in killing); Commonwealth v. Stenhach, 356 Pa. Super. 5, 10 (1986) (broken stock of rifle allegedly used in killing); State ex rel. Sowers v. Olwell, 64 Wash. 2d 828, 829 (1964) (knives allegedly used in crime).  But see State v. Bright, 676 So. 2d 189, 193-194 (La. Ct. App. 1996) (diary).

By contrast, the Commonwealth concedes that many of the materials contained on a cellular telephone are documentary.  As the United States Supreme Court has observed, "The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone," and "could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." Riley v. California, 134 S. Ct. 2473, 2489 (2014).  Furthermore, though the Commonwealth asserts that it will acquire a separate warrant before searching the contents of the telephone, the evidentiary value of the telephone for the prosecution clearly inheres in its documentary contents, rather than in the telephone as a "physical item."  Indeed, in its initial motion for judicial approval of the grand jury subpoena, the Commonwealth indicated that the "cell phone, specifically the information contained therein and accessible through a forensic examination of the phone, constitutes evidence that is essential to the successful completion of the . . . ongoing grand jury investigation."

Additionally, the Commonwealth notes that Mass. R. Prof. C. 3.4 (a), 426 Mass. 1389 (1998), which prohibits a lawyer from "unlawfully obstruct[ing] another party's access to evidence or unlawfully alter[ing], destroy[ing], or conceal[ing] a document

or other material having potential evidentiary value," requires that the firm produce the telephone. Because the firm is now "aware of the [telephone's] import and that it has evidentiary value," the Commonwealth contends, the firm "cannot circumvent its ethical obligations" by invoking the attorney-client privilege. But that argument begs the question. Rule 3.4 (a) of the Massachusetts Rules of Professional Conduct prohibits a lawyer from obstructing a party's access to evidence only where that obstruction is "unlawful." The law firm asserts that its refusal to produce the telephone is not "unlawful," but is instead required by the attorney-client privilege.

Because the Commonwealth does not contest that Doe's privilege against self-incrimination would prohibit it from compelling Doe to produce the telephone had he retained it, and because under Fisher the law firm cannot be compelled to produce materials transferred to it by a client for the provision of legal advice if the client could not have been compelled to produce them, we conclude on the record before us that the attorney-client privilege protects against compelled production of the telephone.

c.   Superior Court judge's decision. Although the judge approved the issuance of the subpoena, he did so on the basis of a logic that differs from the arguments advanced by the Commonwealth on appeal. Unlike the Commonwealth, the judge

correctly interpreted <u>Fisher</u> to mean that the law firm "could refuse to comply with [the subpoena] based on the attorney-client privilege if, had the subpoena been served directly on [Doe], he would be able to assert a Fifth Amendment protection (or parallel protections under art. 12 of the Massachusetts Declaration of Rights)."  The judge nevertheless determined that the law firm could be compelled to produce the telephone.

The judge observed that, had Doe not transferred the telephone to his attorney, nothing would prevent the police from finding and seizing the telephone under a properly issued search warrant.  The judge noted, however, that, because Doe had transferred the telephone to his lawyers, there was a "fly in the ointment" of the search warrant approach.  General Laws c. 276, § 1, a general provision governing the issuance of search warrants, includes in its final paragraph a restriction on the issuance of search warrants for evidence in the possession of lawyers, psychotherapists, and clergymen.  It provides, in part, that "no search warrant shall issue for any documentary evidence in the possession of a lawyer . . . unless . . . a justice is satisfied that there is probable cause to believe that the documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue," or unless "there is probable cause to believe that the lawyer

. . . in possession of such documentary evidence has committed, is committing, or is about to commit a crime."

The judge thus confronted a situation in which the Fisher rule and G. L. c. 276, § 1, appeared, in combination, to place the telephone beyond the reach of law enforcement. Concluding that G. L. c. 276, § 1, "cannot . . . be used as a shield to protect clearly inculpatory evidence . . . from the reach of the law," the judge determined that a subpoena could issue compelling the law firm to turn over the telephone, but only upon a showing of the probable cause that ordinarily would be sufficient, were it not for G. L. c. 276, § 1, to acquire a warrant to search the law firm's offices and seize the telephone. In essence, the judge crafted a new rule through an aggregation of the procedures that would be permitted were it not for the Fisher rule and G. L. c. 276, § 1. In the absence of the Fisher rule, the law firm could be compelled to produce the telephone under subpoena upon the prosecution's satisfying the requirements of Mass. R. Prof. C. 3.8 (f). In the absence of G. L. c. 276, § 1, the police could acquire a warrant to search the law firm's offices if the prosecution established probable cause to believe that the telephone was located in the law firm's offices and contained evidence of a crime. Consequently, the judge concluded that the law firm could be compelled to produce the telephone under subpoena, but only if

the Commonwealth could establish probable cause to believe that the telephone was located in the law firm's offices and contained evidence of a crime.

This approach, however, contradicts both case law and the relevant statute. The judge's approach is built on conflating search warrants and subpoenas. Yet the act of production doctrine's underlying premise is that being compelled to produce evidence in response to a subpoena may involve a forced incriminating statement that would not occur if law enforcement simply found the evidence while executing a search. See, e.g., Commonwealth v. Hughes, 380 Mass. at 593.

Because the act of production doctrine derives from the privilege against self-incrimination, moreover, it may not be set aside based on a showing of probable cause. We have emphasized the distinction between the protection against unreasonable searches afforded by the Fourth Amendment and the more absolute protection afforded by the privilege against self-incrimination. "[U]nlike the more limited protections of the Fourth Amendment prohibition against searches and seizures that are 'unreasonable,'" Blaisdell v. Commonwealth, 372 Mass. 753, 761 (1977), the privilege against self-incrimination admits "no balancing of State-defendant interests" and does not "yield[] to 'reasonable' intrusions." Id. Law enforcement, for instance, plainly could not compel a defendant to disclose where he

allegedly hid a murder weapon, even if the police could establish probable cause to believe that the weapon was hidden somewhere in his house and that, if given a warrant, they would likely be able to find the weapon eventually anyway. To the contrary, "where the privilege [against self-incrimination] applies, it may be overcome only by either (1) a constitutionally adequate grant of immunity; . . . or (2) a valid waiver of the privilege by the person who possesses it." Id. (citation omitted).

Under Fisher, the protection that a client enjoys under the attorney-client privilege is coterminous with the protection that a client would have enjoyed under the privilege against self-incrimination. Consequently, just as the right against self-incrimination may not be set aside based on judicial speculation about what the prosecution might be able to find with a valid search warrant, neither may the Fisher rule. In short, neither the privilege against self-incrimination nor the attorney-client privilege may be extinguished on the basis of a "would've, could've" analysis that invites courts to hypothesize upon what police might be able to find and seize, if given enough time and a valid search warrant.

The judge based his decision on a provision in G. L. c. 276, § 1, that states, "Nothing in this section shall be construed to abrogate, impair, or limit powers of search and

seizure granted under other provisions of the General Laws or under the common law."  Again, however, this conclusion rests on conflating subpoenas with search warrants, and the prosecution's ability to compel production of evidence with the prosecution's power merely to look for it.  The Commonwealth did not seek to obtain the telephone through its "powers of search and seizure."  Instead, it has sought to obtain the telephone via a subpoena.  And the basis upon which we have decided that the Commonwealth cannot obtain the telephone via subpoena has nothing to do with G. L. c. 276, § 1, or any other limitation on the Commonwealth's "powers of search and seizure."  Instead, our holding is based on our determination that the compelled production of the telephone via a subpoena directed at Doe would violate the act of production doctrine, and consequently that the compelled production of the telephone via a subpoena directed at the law firm would violate the attorney-client privilege under Fisher.  Because the Commonwealth here sought, and the judge allowed, a subpoena compelling production of the telephone, the provision of G. L. c. 276, § 1, relating to "powers of search and seizure" has no bearing on the analysis.

     d.  Availability of a search warrant under G. L. c. 276, § 1.  Although the Commonwealth has consistently sought to acquire the telephone via a subpoena, it does indicate that, if we decline to authorize the issuance of a subpoena compelling

the law firm to produce the telephone, it "will seek a search warrant to seize the evidence from the law firm."  Even if the Commonwealth were to pursue that approach, however, it would not gain any support from the provision of G. L. c. 276, § 1, preserving "powers of search and seizure."  That provision precedes, rather than follows, the paragraph prohibiting searches of documentary evidence in the possession of lawyers.[5]

---

[5] The provisions relevant to our discussion appear at the end of G. L. c. 276, § 1, and provide in full:

"Nothing in this section shall be construed to abrogate, impair or limit powers of search and seizure granted under other provisions of the General Laws or under the common law.

"Notwithstanding the foregoing provisions of this section, no search and seizure without a warrant shall be conducted, and no search warrant shall issue for any documentary evidence in the possession of a lawyer, psychotherapist, or a clergyman, including an accredited Christian Science practitioner, who is known or may reasonably be assumed to have a relationship with any other person which relationship is the subject of a testimonial privilege, unless, in addition to the other requirements of this section, a justice is satisfied that there is probable cause to believe that the documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue.  Nothing in this paragraph shall impair or affect the ability, pursuant to otherwise applicable law, to search or seize without a warrant or to issue a warrant for the search or seizure of any documentary evidence where there is probable cause to believe that the lawyer, psychotherapist, or clergyman in possession of such documentary evidence has committed, is committing, or is about to commit a crime.  For purposes of this paragraph, 'documentary evidence' includes, but is not limited to, writings, documents, blueprints, drawings, photographs, computer printouts, microfilms, X-rays, files, diagrams,

See G. L. c. 276, § 1.  The latter paragraph opens,
"Notwithstanding the foregoing provisions of this section,"
making it clear that it in fact does limit the powers of search
and seizure.  See id.  Indeed, because the paragraph prohibits
the issuance of search warrants for documentary evidence except
under certain narrowly drawn circumstances, it plainly does
"abrogate, impair, or limit powers of search and seizure granted
under other provisions of the General Laws or under the common
law."  Id.

The Commonwealth offers two reasons why a search for the
telephone would not violate the restrictions that G. L. c. 276,
§ 1, imposes on searches of law offices.  First, the
Commonwealth asserts that the search and seizure it contemplates
is not for any "documentary evidence," and thus falls outside
the scope of the statute.  Second, the Commonwealth contends
that, even if the statute did apply to the contemplated search
for the telephone, the search falls within the statute's
exceptions for situations where "documentary evidence will be
destroyed, secreted, or lost in the event a search warrant does
not issue."  G. L. c. 276, § 1.  We address each in turn.

i.  The Commonwealth's first argument is easily dismissed.
General Laws c. 276, § 1, contains a broad definition of

---

ledgers, books, tapes, audio and video recordings, films or
papers of any type or description."

"documentary evidence." It provides that, "[f]or purposes of this paragraph, 'documentary evidence' includes, but is not limited to, writings, documents, blueprints, drawings, photographs, computer printouts, microfilms, X-rays, files, diagrams, ledgers, books, tapes, audio and video recordings, films or papers of any type or description." Id. The Commonwealth concedes that "the modern cell phone may contain any and all of the above listed categories of evidence."

The Commonwealth's contention that a search for the cellular telephone would not constitute a search for "documentary evidence" relies upon the same misplaced distinction between the telephone as a "physical item" and the telephone's undeniably documentary contents that the Commonwealth advances in arguing that the Fisher rule does not apply, and the distinction fails here for similar reasons. For instance, while "files" are specifically identified as "documentary evidence" in the statute, the statute itself does not refer to file cabinets. If we were to accept the Commonwealth's distinction between the telephone as a "physical item" and the documentary materials that the telephone contains, then the Commonwealth also could acquire a warrant to search an attorney's office and seize a file cabinet, including the files it contains, as a "physical item." The Commonwealth conceded in its motion for issuance of a subpoena that the evidentiary value

of the telephone for purposes of investigation derives from the "documentary" materials contained on the telephone, rather than from any aspect of the telephone as a "physical item." Under these circumstances, it is clear that a search for the telephone is a search for "documentary evidence" within the meaning of G. L. c. 276, § 1.

ii. The Commonwealth next asserts that a search warrant may issue in this case because "there is probable cause to believe that the documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue." For several reasons, we are unconvinced by the Commonwealth's argument that, "in the event that the Commonwealth cannot otherwise obtain the item, the evidence will effectively be 'secreted' and 'lost.'"

The interpretation offered by the Commonwealth diverges from any accepted definition of "secreted" or "lost." An item is "secreted" when it is "hid[den]," "conceal[ed]," or "remove[d] from observation or the knowledge of others"; an item is "lost" when it is "not be found; missing" or "no longer held or possessed; parted with." Webster's New Universal Unabridged Dictionary 1640, 1069 (2d ed. 1983). The Commonwealth's argument would require that we add to these familiar definitions a new, distinctly unfamiliar definition: "unobtainable by law

enforcement because of the combined effect of a legal privilege and a statute."

The interpretation offered by the Commonwealth, moreover, ignores the statute's requirement for a factual showing. To obtain a search warrant for a lawyer's office, the prosecutor must make a showing of "probable cause to believe that the documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue," or that "there is probable cause to believe that the lawyer . . . in possession of such documentary evidence has committed, is committing, or is about to commit a crime." G. L. c. 276, § 1. Under the interpretation urged by the Commonwealth, this requirement of a factual showing of probable cause disappears. Instead, whether an item is "secreted" or "lost" becomes a purely legal issue, on which the Commonwealth can prevail simply by showing that the lawyer holding the evidence has invoked a privilege against compelled production.

The Commonwealth's overarching contention is that the exception applies to any situation where the application of G. L. c. 276, § 1, renders documentary materials whose contents are not themselves privileged unobtainable by law enforcement. Nothing in the language of the exception supports this view, and it gains no support from the legislative history of the act that amended G. L. c. 276, § 1, to add the provision at issue here.

The legislative history indicates that the provision was inserted for two main reasons.  First, the provision sought to ensure that "the holder [of material sought by law enforcement] has the opportunity to argue that the material is privileged" before the material is seized, an opportunity unavailable with search warrants because they are "granted ex parte with no notice to the holder of the material."  Memorandum from Patricia A. Boies, Deputy Chief Counsel, Office of Legal Counsel, to then Governor, Michael S. Dukakis (Dec. 18, 1986).  Just so, here, confronted by a subpoena seeking the telephone, the law firm responded by asserting the attorney-client privilege, as articulated in Fisher.  Fisher had been the law for more than a decade when the provision was enacted.  Because we presume that the Legislature acts against the backdrop of already-existing law, see Alliance to Protect Nantucket Sound, Inc. v. Energy Facilities Siting Bd., 457 Mass. 663, 673 (2010), it is reasonable to think that Fisher would supply one possible basis for a claim of privilege.

Second, the legislative history indicates that the provision sought to counteract the disruptive effect that police searches could have on "the private, confidential relationships between the professionals covered and their clients, patients, or penitents."  Boies memorandum, supra.  In particular, the provision was "designed to protect against the situation in

which police executing a search warrant may look through many documents, both privileged and unprivileged, relating to clients who are not even the subject of the documents sought, and then must make on-the-spot decisions as to what should or should not be seized." 1986 House Doc. 6574 (Letter from then Governor Michael S. Dukakis to the Senate and House of Representatives [Dec. 24, 1986]). The risk that law enforcement will inadvertently see or seize private, confidential documents related to uninvolved third-parties exists whenever law enforcement executes a search, regardless of whether the documents that law enforcement is looking for are privileged.

Accordingly, we reject the Commonwealth's contention that documentary evidence is "secreted" whenever an attorney invokes the Fisher rule to resist its compelled production. Instead, we conclude that the exception applies, as it says, only where "there is probable cause to believe that the documentary evidence will be destroyed, secreted, or lost in the event a search warrant does not issue." As indicated, this is a fact-specific determination. Were the Commonwealth to seek a search warrant on the same record that was before the Superior Court judge in March, 2014, when the Commonwealth moved for judicial approval for a subpoena, it would not satisfy the "secreted" exception. At that time, the Commonwealth agreed that the telephone had been given to the law firm for purposes of

acquiring legal advice. Nothing in the record suggests that in March, 2014, the law firm was no longer engaged in providing the requested advice. The privileged retention of client documents in such circumstances cannot be said to be the secretion of those documents. Hence, in this case, on this record, there is no evidence suggesting secretion of the documents. We leave for another day the question whether and under what circumstances the prolonged retention by counsel of client documents unprotected or no longer protected by any privilege might qualify as secreting under the meaning of G. L. c. 276, § 1.

Notwithstanding the foregoing, we are mindful of the concern that, if evidence possibly obtainable via a search when it was in the client's hands were to become immune from both search and subpoena when placed in an attorney's hands, the result will be, as the Superior Court judge noted, "a race . . . to the lawyer's office." We make several observations.

First, G. L. c. 276, § 1, only operates to bar the search of an attorney's offices in a narrow set of circumstances. The statute is limited to searching for documentary evidence and would not typically encompass situations where a client seeks to hide the instrumentalities or proceeds of a crime at an attorney's office. While the telephone at issue here constitutes "documentary evidence" under the statute, the statute also provides explicit exceptions for circumstances

where the evidence "will be destroyed, secreted or lost in the event a search warrant does not issue," or for circumstances where the holder of the evidence "has committed, is committing, or is about to commit a crime."

Second, it is the act of producing the telephone by the law firm, rather than the telephone itself, that is covered by the attorney-client privilege. The client's right against compelled production by his or her attorney is not absolute. To fall under the Fisher rule, materials whose contents are not themselves privileged must have been transferred to counsel "for the purpose of obtaining legal advice." Fisher, 425 U.S. at 404. Accordingly, when a client transfers materials to an attorney for purposes of shielding them from law enforcement's reach, the Fisher rule offers no protection.[6]

Third, nothing we have said suggests that a lawyer, having received materials whose contents are not themselves privileged for purposes of rendering legal advice, may retain such materials indefinitely, absent a continuing bona fide need and purpose related to the provision of legal advice. Any

---

[6] The act of production doctrine is itself not absolute and admits of the "foregone conclusion" exception. See Commonwealth v. Gelfgatt, 468 Mass. 512, 522 (2014) (Commonwealth may compel a testimonial and incriminating act of production if it can establish that "the information that would be disclosed by [a] defendant is a 'foregone conclusion'"). The Commonwealth does not argue that the exception has any application to the facts of record here.

assessment of whether and, if so, when client materials would cease to be protected by the Fisher rule is, of course, a complex matter, involving factual determinations that will depend on the specific circumstances presented. Because the Commonwealth has never argued that either Doe's initial transfer of the telephone or the law firm's continued retention of it are not justifiable "for the purpose of obtaining legal advice" under Fisher, and the parties have not provided briefing on the issue, we do not address the availability of a subpoena compelling the production of evidence in other circumstances.[7]

3. Conclusion. Confining ourselves to the record that was before the Superior Court judge in March, 2014, we conclude that Doe's attorney-client privilege protects against compelled production of the telephone by the law firm. We remand the matter to the single justice for entry of a judgment allowing Doe's petition for relief under G. L. c. 211, § 3, ordering the Superior Court to reverse the order approving the issuance of a grand jury subpoena duces tecum, and for such other proceedings as are consistent with this opinion.

So ordered.

---

[7] We note that the concurrence proposes a protocol in circumstances that are not before us, and we take no view as to its propriety.

CORDY, J. (concurring, with whom Gants, C.J., and Spina, J., join). John Doe is the target of a grand jury investigation. According to evidence gathered in the course of that investigation, Doe's cellular telephone contains evidence of the criminal activities under investigation. In June, 2013, Doe transferred his cellular telephone to a law firm that was providing him legal advice. After demonstrating that the Commonwealth had probable cause to believe that the cellular telephone contained evidence of the crimes under investigation, the judge below authorized the issuance of a subpoena to the law firm requiring it to produce the cellular telephone before the grand jury.

In objecting to the issuance of the subpoena, neither Doe nor the law firm contends that the cellular telephone contains any communications or other information stored on its memory that might be protected by the attorney-client or any other privilege. Rather, they contend that because the cellular telephone may contain incriminating evidence, compelling Doe to produce it before the grand jury by means of a subpoena would essentially compel a testimonial acknowledgement from him that the cellular telephone was his. Consequently, the law firm argues, having come into possession of the cellular telephone in the course of giving Doe legal advice, it also cannot be compelled by subpoena to produce the cellular telephone before

the grand jury.  The law firm and Doe further argue that G. L. c. 276, § 1, the statute governing the issuance of search warrants, does not permit the Commonwealth to search for and seize the cellular telephone while it remains in the possession of the law firm, even though it could be obtained from Doe through that mechanism.  Thus, they argue, the Commonwealth is effectively precluded from obtaining any of the nonprivileged information on the cellular telephone relevant to the criminal investigation, at least on the record before the judge below.

I agree with the court that Fisher v. United States, 425 U.S. 391, 402 (1976), controls the subpoena question in this case.  Where the cellular telephone (cell phone) was turned over to the law firm for the purpose of obtaining legal advice, and Doe himself could not have been compelled to produce the phone in response to a similar subpoena because the act of production would be both testimonial and incriminating, the umbrella of the attorney-client privilege protects it from compelled production. I also agree that the record below is inadequate to make a judgment about the propriety of issuing a search warrant.  I write separately, however, to emphasize that placing the cell phone (or any other incriminating documentary evidence) in the hands of an attorney does not sequester it under Massachusetts law from the reach of law enforcement pursuant to G. L. c. 276, § 1, where it is not claimed that the cell phone itself is

privileged or contains privileged material, where there is probable cause to believe that it contains evidence of crimes under investigation by the grand jury, and where it is no longer being retained for the purpose of rendering legal advice. To interpret G. L. c. 276, § 1, otherwise would stand completely at odds with clear legislative intent.

General Laws c. 276, § 1, was amended by c. 691 of the Acts of 1986 to provide special protections for documentary evidence in the possession of lawyers, psychotherapists, and clergymen, from the intrusions that might be caused by the execution of search warrants, except in circumstances where the failure to issue such a warrant might result in the evidence being unavailable through secretion, destruction, or loss.[1] The 1986 amendment identified these professionals and provided unique protections for documents in their files precisely because the law provides special privileges to the consultations they have with their clients, patients, or parishioners. The Legislature recognized that a search of their files for nonprivileged documents (pursuant to a search warrant) would pose a significant risk that the privileges of innocent third parties

---

[1] The amendment also provided that a search warrant for such documentary evidence could be obtained if there was probable cause to believe that the lawyer, psychotherapist, or clergyman in possession of the evidence had committed, was committing, or was about to commit a crime.

would be compromised.  See, e.g., 1986 House Doc. No. 6574 (Letter from then Governor, Michael S. Dukakis, dated December 24, 1986, explaining purpose of amendment is to protect confidential relationship of covered professionals and their clients); Letter from Karen Hudner, Legislative Agent, Civil Liberties Union of Massachusetts, to then Governor, Michael S. Dukakis (Dec. 9, 1986) (Hudner letter) (arguing amendment would protect privacy of third persons in confidential relationships with covered professionals); Memorandum from Patricia A. Boies, Deputy Chief Counsel, Office of Legal Counsel, to the then Governor, Michael S. Dukakis (Dec. 18, 1986) (Boies memorandum) (highlighting proponents' concern that police, while executing a search warrant, look through privileged and unprivileged documents that are both related and unrelated to subject of search).

As repeatedly articulated by the proponents of the legislation, over the many years it was under consideration by the Legislature, the legislation was intended "to protect innocent third parties in a confidential legal or medical relationship . . . [and] would affirm that in Massachusetts . . . the privacy of innocent people is protected against unnecessary intrusion."  Hudner letter, supra.  The proponents also proclaimed that the amendment would not impede the legitimate interests of law enforcement because "their right to

subpoena the very same material would still be available to them."  Letter from James T. Hilliard, Counsel, Massachusetts Psychiatric Society, to then Governor, Michael S. Dukakis (Dec. 16, 1986).  In other words, there would be "no harm from this [amendment], which would merely shift [the gathering of evidence] to the usage of a subpoena duces tecum," a more surgical instrument, thereby "permit[ting] orderly litigation of the issue of privilege."  Letter from Arnold R. Rosenfeld, Chief Counsel, Committee for Public Counsel Services, to then Governor, Michael S. Dukakis (Dec. 10, 1986).  See Letter from Nathan A. Talbot, Committee on Publication for Massachusetts, The First Church of Christ, Scientist, to then Governor, Michael S. Dukakis (undated) (stating amendment would not hinder investigations).  Indeed, in proposing amended language that narrowed the breadth of the amendment and ultimately became the statutory language, the Governor urged the General Court to adopt his language because it would accomplish the purpose of protecting privileged relationships without having "the unintended effect of resulting in the loss of evidence not protected by any privilege."  1986 House Doc. No. 6574.  There is, however, nothing in the extensive legislative history leading to the adoption of the amendment to suggest that the Legislature (or the proponents) considered the circumstances of the present case -- where a subpoena is not available as an

alternative to the Commonwealth for reasons unrelated to the privileged nature of the documents themselves.

To interpret the 1986 amendment to bar the seizure upon warrant of unprivileged evidence of a crime, where the evidence cannot be obtained by subpoena only because of the incriminating nature of the act of compelled production, runs counter to (not in accord with) the purposes of its enactment as articulated by the Governor and its proponents.  See, e.g., Boies memorandum, supra (explaining opportunity to litigate privilege issue before seizure was crucial to proponents).  Simply put, the amended law was never intended to permanently shield from seizure unprivileged evidence of criminal activity placed in the hands of an attorney by a client under investigation, or to create a depository for the secretion or sequestration of such evidence from law enforcement.  See, e.g., 1986 House Doc. No. 6574 (proposing language -- ultimately accepted -- that avoids unintended protection of unprivileged materials).  Indeed, the exclusions in the amendment for documents that might become destroyed, lost, or secreted from the Commonwealth is consistent with the Legislature's intention not to make unprivileged material unavailable to the Commonwealth.

In light of the extensive legislative history at our disposal laying out the contrary intentions of all parties to the legislative process, our responsibility is to interpret the

statute in accord with those intentions if at all possible. Commonwealth v. Parent, 465 Mass. 395, 409 (2013), quoting Commonwealth v. Rahim, 441 Mass. 273, 278 (2004) ("[court] need not adhere strictly to the statutory words if to do so would lead to an absurd result or contravene the clear intention of the Legislature").

I am of the view that both the interests protected by the amendment and the Commonwealth's interest in securing evidence not intended to be protected by the amendment can be reconciled, and I would not preclude such a reconciliation on an adequate record. I would conclude that in the circumstances where it appears that an item of evidence sought by the Commonwealth cannot be obtained from the law firm by the issuance of a subpoena because of its client's privilege regarding production, and where, as a consequence, a search warrant would ordinarily be necessary, the warrant application should be presented to a judge, with those circumstances set out in an affidavit. The judge should then issue a short order of notice to the law firm, giving it an opportunity to raise any privilege that might protect the item from seizure. Along with the short order of notice, the judge should issue an order barring the law firm from transferring or destroying the item pending further ruling of the court. In this manner, the unprivileged and relevant evidence is not lost to the Commonwealth, and there is an

opportunity prior to a search for privileges to be raised and litigated. If the judge concludes that no privilege applies to the item and that its retention by the law firm is no longer for the purpose of or necessary to the rendering of legal advice, the judge may properly order the warrant to issue.[2] In such circumstances, the continued retention of the evidence would constitute its concealment within the meaning of the term "secreted" as used in G. L. c. 276, § 1.[3] The judge may further direct the parties to fashion a protocol unlikely to pose a risk to the privileges of other documents or clients or to result in a production that is testimonial and incriminating. See, e.g., Preventive Med. Assocs., Inc. v. Commonwealth, 465 Mass. 810, 824-25, 828 (2013) (summarizing court's ordered procedure for privilege review); Commonwealth vs. Ellis, Mass. Super. Ct. Nos. 97-192, 97-562, 98-355, 97-193, 97-561, 97-356, and 97-563, slip op. at 44-45 (Aug. 18, 1999) (outlining procedure used to search

---

[2] The Restatement (Third) of the Law: The Law Governing Lawyers § 119 comment (c) (Physical Evidence of a Client Crime) (2000), provides that although it may be reasonably necessary for purposes of representation to take possession of evidence for the time necessary to examine it, "physical evidence of a client crime in possession of the lawyer may not be retained to a point at which its utility as evidence for the prosecution is significantly impaired."

[3] "Secrete" is defined in Black's Law Dictionary 1557 (10th ed. 2014), as "to remove or keep from observation, . . . to conceal . . . to hinder or prevent officials . . . from finding it."

law firm records).  See also ABA Standards for Criminal Justice § 4-4.6 (Physical Evidence) (3d ed. 1993) ("If defense counsel retains the item [of evidence], he or she should retain it in his or her office in a manner that does not impede the lawful ability of law enforcement authorities to obtain the item").

Accordingly, while I would reverse the judge's order authorizing the issuance of a grand jury subpoena, I would not preclude the issuance of a search warrant on a more complete record with regard to the status of the cellular telephone evidence, its utility as evidence of a crime, and whether its continued retention is necessary for the purpose of rendering legal advice.